(No. 37478.—

LA SALLE NATIONAL BANK *et al.,* Appellees, *vs.* THE
COUNTY OF COOK, Appellant.

*Opinion filed September 27, 1963.*

DANIEL P. WARD, State's Attorney, of Chicago, (ED-
WARD J. HLADIS, and THOMAS A. HETT, Assistant State's
Attorneys, of counsel,) for appellant.

THOMAS A. MCGLOON, JACK M. SIEGEL, ALLEN HART-
MAN and FREDERICK W. TURNER, JR., of Chicago, for ap-
pellees.

Mr. JUSTICE HOUSE delivered the opinion of the court:

The county of Cook appeals from a declaratory judg-
ment of the circuit court holding the county zoning ordi-
nance unconstitutional as to plaintiffs' 113½-acre L-shaped
tract in the south half of section 21 in Northfield Township.
It abuts on the Chicago and North Western Railway to the

east and lies from ½ to ¾ mile north of Lake Avenue, approximately 1200 feet south of Willow Road. It is slightly over ¼ mile east of Pfingston Road, except for a corridor about 220 feet wide extending from its southwest corner to Pfingston which is its only outlet to a public street or highway. Some of the subject property is swampy and has never been plowed or used for crops. The land uses in the south ¾ of the section within which the subject property lies consist of a few homes on the perimeter county roads and on Lawson, a stub road east off of Pfingston; a vacant light-manufacturing area due east of the subject tract; a cemetery just south of that manufacturing area, and the remander is farm or idle land.

Beyond the perimeter of the ¾ section and about ¼ mile south of the subject property is the Glenview Naval Air Station with a number of runways, the longest of which is a 10,000-foot jet landing strip. Its peak take-off and landing period is on Sundays and is then about equal to that of O'Hare Airport. Upon the station's grounds are hangars, offices, barracks and an area for junked automobiles and airplane frames. There is also included a development of 260 multi-family dwellings for married personnel. Approximately ¼ mile to the southwest is located a steel strapping plant and on the northeast is another cemetery. In the immediate area (encompassing 1000 acres) approximately 30 per cent is improved and the balance is unused except for farming. About one half of such improved area is devoted to substantial single family dwellings ranging in value from "modest" to $75,000.

The subject property is zoned R-3 (single-family lots with a 20,000-square-foot minimum) which would permit construction of 147 homes. Plaintiffs propose to subdivide the tract into lots 10,000 square feet in area and thereby provide for 335 dwelling units. The zoning in the immediate area is mostly R-3. About 40 acres abutting upon it to the east across the railroad is M-1 (restricted manufacturing)

and 120 acres lying ¼ mile south of the corridor is also zoned M-1, upon part of which is the plant of Signode Steel Strapping Company. Between that plant and the subject property the zoning is R-2, requiring a 40,000-square-foot lot minimum.

Witnesses called by the plaintiffs were of the opinion that if 20,000-square-foot lots were required the property would remain largely undeveloped because of the proximity of the railroad, naval air station, cemetery and adjacent M-1 zoning. They pointed out that continued sporadic development upon metes-and-bounds tracts would cause trouble because such development is not related to the road system and sanitary facilities and it would not be for the public welfare. They believed that any depreciatory effect of development on the greater density 10,000-square-foot lots had already taken effect because of the proximity of the nonresidential uses. They indicated that the proposed development would be an advantage in that it would provide a buffer area between the railroad, air station, cemetery and manufacturing property, and the estate-type homes to the west. One witness valued the tract as zoned at $191,000 and at $398,650 if the proposed development is permitted.

Defendant's experts testified that 20,000-square-foot lots could be successfully developed, that it was better to have a low-intensity use near an airport, and that development as planned by plaintiffs would reduce the value of both the vacant land and the few large homes along the roads in the area. They admitted however, that a railroad and such an installation as the air station had a depreciatory effect on the uses closest to them.                              `

Upon this evidence the trial court adopted the view of the master that the ordinance bore no substantial relationship to the public welfare and declared the ordinance void insofar as it prevented development of the property on 10,000-square-foot lots. The county insists that plaintiffs failed to demonstrate hardship by the R-3 classification and

failed to overcome the presumptive validity of the zoning ordinance.

Hardship of zoning upon an owner is not confined solely to difference in value because of a restrictive classification, but it may be caused by inability to economically develop by reason of the restriction. In this case there is a very substantial difference in value depending upon lot areas. In addition, the evidence raises serious doubt as to whether the subject property can be developed for R-3 purposes because of the deterrent influences proximate to its location. The county directs attention to several subdivisions in the area being developed under the R-3 classification, but they are further away from the combination of a double-track railroad and a busy airport. We think the record demonstrates hardship to plaintiffs under the present zoning classification.

This zoning restriction does not appear to bear a substantial relation to the public safety and welfare. The evidence indicates that development in the immediate area under the R-3 zoning has been very slow and does not establish that the areas further west and north will be adversely effected by R-4 development of the subject property. There may be a slight loss in value to the estate-type homes, particularly on Lawson and Willow roads, but most of them are built upon much larger tracts than the 20,000-square-foot minimum required by R-3 zoning, and they would suffer to some extent by the development of any subdivision. It is not just the location of the railroad, nor the closeness of the air station, nor the existence of manufacturing plants, which makes this property less attractive for those who are willing to invest in the relatively expensive homes usually associated with less dense development, but it is the combination of these deterrents together with the county's own zoning program. For example, a quarter of a mile to the south, on both sides of the railroad, a 120-acre tract is zoned M-1, and as recently as January 25, 1961, the area immedi-

ately to the east of the subject property was changed by amendment from residential to light manufacturing.

Zoning classifications must bear real and substantial relationship to the public welfare, health or safety; and where the gain to the public is small, as compared to the hardship imposed on the owner, no valid basis for exercise of the police power exists. (*La Salle Nat. Bank of Chicago* v. *County of Cook,* 12 Ill.2d 40; *Liebling* v. *Village of Deerfield,* 21 Ill.2d 196.) Applying the foregoing test to this case, the hardship upon plaintiffs is real and apparent while preservation of the R-3 classification in the face of circumstances here prevailing does not measure the public health, safety or welfare.

We find no error in the judgment entered by the circuit court of Cook County and it is, accordingly, affirmed.

*Judgment affirmed.*