EDWARD HINES LUMBER COMPANY et al., Plaintiffs-Appellees, v. THE VILLAGE OF VILLA PARK et al., Defendants-Appellants.

(No. 74-136;

Second District (2nd Division)—January 6, 1976.

James K. Young and Ralph J. Gust, Jr., both of Lombard, and Kenneth Moy, of Elmhurst, for appellants.

Edward T. Graham, of Glen Ellyn, for appellees.

Mr. JUSTICE THOMAS J. MORAN delivered the opinion of the court:

Plaintiffs in this case are Elmhurst National Bank, contract seller of the land in question, and Edward Hines Lumber Company, contract purchaser of the land. The purchase agreement was subject to the defendant's permitting the buyer to use the tract for a building-materials supply yard. Plaintiffs attempted to have the tract's existing "R-2 single family resident district" zoning amended to "M-1, light industrial district," but the amendment was rejected by the defendant.

Defendant appeals from an order of the circuit court declaring the "R-2 single family resident district" zoning ordinance void as to plaintiffs' property. The order was pursuant to the court's declaratory judgment in favor of the plaintiffs, holding that the defendant village's R-2 zoning classification is unreasonable, arbitrary, capricious, and confiscatory as applied to the plaintiffs' property.

This raises the following questions: (1) did the trial court properly

hold the defendant's zoning ordinance invalid as applied to the plaintiffs' property; (2) was the trial court's order valid in that it purports to allow plaintiffs to stack lumber to a height of 18 feet, although a variance for this purpose would have been required even under the light industrial zoning urged by plaintiffs; (3) was the testimony of plaintiffs' expert witnesses properly admitted; and (4) was Edward Hines Lumber Company, as contract purchaser of the property in question, a proper party to the suit?

The tract in question forms an inverted right triangle of about 5 acres in area with its hypotenuse running northwest-southeast along a railway right-of-way; its north and east sides, which meet at a right angle, coincide with the northeastern corporate limits of defendant. The eastern boundary coincides also with Villa Avenue, which is a main north-south road. A small tract of land, at the northwest tip of the triangle is zoned R-2. This parcel and plaintiffs' tract are the only properties within defendants' limits immediately north of the railroad tracks, not zoned for industrial use.

The property along the railroad tracks to the north and the west of plaintiffs' property is zoned light industrial; a large beer distributorship warehouse (400 feet from defendants' property) and a fairly recently constructed chemical plant are located thereon. Somewhat further to the northwest is a recently established bus company. The area directly north and northeast of plaintiffs' property, outside the village limits, is an unincorporated portion of Du Page County. There are several single-family residences along this northern boundary, and one block further north at the intersection of Hill and Villa Avenue there is a multiple-unit dwelling. The record reveals that one block still further north are numerous commercially zoned properties. Directly to the east of plaintiffs' property, across Villa Avenue (and thus in an unincorporated portion of Du Page County) is a tract zoned industrial which is used for stone quarry operations.

A 7-acre area to the southeast of plaintiffs' property, across the railroad tracks from it and within the defendant's limits, is zoned for industrial use. The property to the south and southeast of plaintiffs' tract, across the railroad right of way, is zoned single-family residential.

Defendant claims that the evidence presented did not establish that the existing residential zoning was arbitrary, unreasonable, capricious, or confiscatory with regard to plaintiffs' property. It asserts that even if the evidence did establish a legitimate difference of opinion as to the reasonableness of the zoning classification for that tract, there is nevertheless a presumption in favor of the validity of a zoning ordinance;

that to overcome this presumption, the adverse evidence must clearly and convincingly show that the ordinance is arbitrary and unreasonable and without substantial relation to the public health, safety, comfort, morals or general welfare.

■■ These familiar principles of zoning law to which defendant refers were acknowledged in *Kellett v. County of Du Page*, 89 Ill.App.2d 437, 442 (1967), and in *Jackson v. County of Du Page*, 10 Ill.App.3d 497, 499 (1973), and recently reaffirmed by our supreme court in *La Salle National Bank v. City of Evanston*, 57 Ill.2d 415, 428 (1974). An additional legal guideline, long established in the reviewing courts of Illinois, is the validity of each zoning ordinance must be determined on its own facts and circumstances. *La Salle National Bank v. County of Cook*, 12 Ill.2d 40, 46 (1957); *Stalzer v. Village of Matteson*, 14 Ill.App.3d 891, 901 (1973).

■■ Among the factors to be considered when determining the validity of an ordinance are those enumerated in *La Salle National Bank v. County of Cook*, 12 Ill.2d 40, 46-47: "(1) The existing uses and zoning of nearby property, (2) the extent to which property values are diminished by the particular zoning restrictions, [citations] (3) the extent to which the destruction of property values of plaintiff promotes the health, safety, morals or general welfare of the public, [citations] (4) the relative gain to the public as compared to the hardship imposed upon the individual property owner, [citation] (5) the suitability of the subject property for the zoned purposes, * * * (6) the length of time the property has been vacant as zoned considered in the context of land development in the area in the vicinity of the subject property. [Citations.]" Although no one factor is controlling (*La Salle National Bank v. County of Cook*, 12 Ill.2d 40, 47), existing uses and zoning classifications of nearby property are of paramount importance. *Ryan v. City of Elmhurst*, 28 Ill.2d 196, 198 (1963); *Kellett v. County of Du Page*, 89 Ill.App.2d 437, 443.

■■ With the above principles of zoning law in mind, we have reviewed the evidence presented and conclude that the plaintiffs overcame the presumption of validity for the zoning ordinance by clear and convincing evidence.

Plaintiffs' evidence established that the property in question had upon it an old abandoned house and several out-buildings, all of which had fallen into disrepair, and that the area had been used as a site for dumping refuse. It also established that within the past 10 years, defendant has passed at least seven separate zoning ordinances changing the zoning on various parcels of property, in the same area as the subject prop-

erty, from residential to industrial use and that in the past 5 or 6 years, only one single-family residence has been built in the area.

Each of the plaintiffs' three expert witnesses testified that the highest and best use of the subject property was not as zoned, but rather M-1, or industrial. They agreed that the value of the property as zoned is only 20% of its value under the proposed use; that its development for single-family residences is economically unfeasible because of the surrounding industrial uses, and because the triangular shape of the tract, bounded by the railroad, necessitates cutting it into only 7 lots with a cul-de-sac access leading in from Villa Avenue, whereas a rectangular tract of the same area would yield 15 building lots; and that such arrangement was rendered even less desirable because the houses on the cul-de-sac would face the piles of gravel and mining equipment across Villa Avenue to the east. Each testified to the strong recent trend towards industrial zoning in the area. Pointed out were similarities between the subject property and another triangular property northwest tip of which is contiguous with the southeast tip of the subject property: both properties are within the village limits; each comprises a triangle of roughly 6 acres; each has a railroad siding and fronts on Villa Avenue; comparable public utilities are available to each. But unlike the subject property, this other triangle is zoned industrial.

Plaintiffs' witnesses also established that the value of the small land-locked parcel immediately to the west of the subject property would be enhanced, presumably because it too would likely be rezoned for industrial use if plaintiffs' proposed use were to be permitted. Two of plaintiffs' expert witnesses were of the opinion that the proposed use would have no detrimental effect on the residential property to the south and only a "very minimal" detrimental effect on those properties to the north. Plaintiffs third expert witness was of the opinion that there would be no detrimental effect on those properties to the south because they are effectively buffered by the railroad tracks; that the properties to the north would not be any further depreciated in view of the "many, many other [industrial] uses" in the area; and that the depth of the lots to the north would permit, by appropriate plant or fence screenings, the mitigation of any depreciation which might have occurred. These witnesses were of the opinion that there would be no detriment to the public health, welfare, and morals if the property were used as proposed.

A vice president of the Edward Hines Lumber Co. testified that the Hines building plans include proper lighting, landscaping and fencing all around; that there would be no catalogue or heavy appliance sales, and no parking lot lights left on after 9:30 p.m.; that he expected 80 to 100 vehicles, including suppliers, to be entering and leaving the premises

during the day; and that the projected volume of business is $2,500,000 annually.

Neither of defendant's expert witnesses felt that the highest and best use of the property was as zoned. One stated the best use would be multiple, attached housing units, and that any other use would be directly detrimental to residential properties to the north, and indirectly detrimental to those south across the railroad tracks in that the market value would be lowered and the homes would be harder to sell. He also felt the stacks of lumber would be a visual detriment to the properties to the south. The conclusions of this witness as to the highest and best use of the subject property and as to the future detriment on surrounding residential property are subject to some doubt; however, as he admitted he had not studied the market values of the industrial properties in that area, nor made a study to determine the expected percentage of depreciation on the properties which he thought would be adversely affected. Another expert witness for the defendant was of the opinion that the highest and best use would be "multiple family or manufacturing type of zoning," not to include industrial uses, and that any use other than single-family residential would adversely affect the adjoining properties (more so, those to the north than to the south), but that the extent of such effect could not be measured at the present time. The defendant's Chief of Police testified that there were traffic problems along Villa Avenue in that due to commuter trains the evening rush hour traffic sometimes "stacked" up for two long blocks north from the railroad tracks; that traffic problems are already aggravated by recent building projects in the area; and that the proposed use would be a "further negative factor." Using the property for multiple dwelling units, he admitted, would also aggravate existing traffic problems. When asked if there was any development of property which would not have a further negative effect on traffic, he responded, "a truck farm."

There was a stipulation that, if permitted to testify, four homeowners north of the subject property and one homeowner south would state they believed that the proposed use would adversely affect the value of their property as well as the safety and comfort of their families.

The trial judge noted in the course of trial that "a picture is worth a thousand words." We find this to be a particularly apt observation in this case. The zoning map in evidence clearly reveals that the subject property is the only property within the defendant's corporate limits north of the railroad tracks which is zoned residential. It is surrounded by large industrial tracts to the northwest and the southeast within the defendant's limits and directly to the east outside of the limits. The rail-

road buffers the subject property from the residential properties to the south and southwest.

Directly to the north, outside the defendant's limits, are several residential properties abutting the property in question. There has been no single-family residential construction in this area in recent years, although there is one recent constructed multiple-dwelling unit a block further to the north. There was uncontroverted evidence of a strong industrial trend in this area. None of the opinion witnesses called by either side testified that the existing single-family residential zoning was the highest and best use of this property. There was varying testimony as to the amount, if any, of detriment which would be suffered by the residential properties in the surrounding areas. However, defendant's opinion witnesses who, by implication, agreed that the highest and the best use of the property was not single-family residential, conceded that any use other than single family would adversely affect nearby residential properties. Expert testimony was received that the small portion of landlocked property directly to the west of plaintiffs' tract would undoubtedly appreciate in value if plaintiffs' property were used as proposed. There was no evidence that the property in question was not suitable for the proposed uses. There was evidence that the existing zoning restrictions on that property made it worth only 20% of what it would be worth if rezoned as plaintiffs suggest.

■■ Where both plaintiffs' and defendant's expert witnesses by implication of their testimony agree that the highest and best use of a property is not as zoned, it is incumbent upon the proponent of the ordinance to show that it is reasonably related to the public health, safety, or morals. This is particularly true where the detriment to the property owner is much greater than the benefit to the public. (See *Hoekstra v. City of Wheaton*, 25 Ill.App.3d 794, 798 (1975).) As we pointed out in *Fiore v. City of Highland Park*, 76 Ill.App.2d 62, 71 (1966):

> "* * * the fact that there is a difference of opinion among the witnesses—lay and expert,—does not mean that the court must find that the reasonableness of the ordinance is debatable and, hence, uphold the ordinance. In cases of this nature, a court must expect differences of opinion. It is for the court to determine from all of the facts whether the differences of opinion are reasonable and justifiable. [Citations.]"

The trial court was justified in finding the zoning ordinance in this case invalid with respect to plaintiffs' property.

Defendant questions the validity of the court's order in that it purports to allow plaintiffs to stack lumber to the height of 18 feet on the subject

property, a factor which would require a special variance even under the zoning requested. Defendant raised this issue for the first time during rebuttal argument on appeal; it is therefore not a proper subject for consideration here.

■■■ Two additional issues raised by defendant on appeal are without merit. Defendant argues that the opinion testimony of plaintiffs' witnesses was without proper foundation since the court improperly took judicial notice of their qualifications as expert witnesses. Defendant maintains, therefore, that the opinion testimony of these witnesses was improperly received by the court since the witnesses' qualifications were not shown by the record. We point out that defense counsel made no objection to the qualifications of these witnesses as experts prior to their testifying and therefore these issues are properly waived on appeal. (*Stirs, Inc. v. City of Chicago,* 24 Ill.App.3d 118, 123 (1974).) Defendant's argument fails for two additional reasons. There was sufficient testimony in the record to establish each of plaintiffs' three opinion witnesses as experts as each testified he had been in the real estate and appraisal business, two of them testified to such employment for 20 and 23 years, and the third, the court noted, had appeared before it as an appraiser and opinion witness "at least fifty times." (See *Trustees of Schools v. Schroeder,* 23 Ill.2d 74, 78 (1961); *Department of Business & Economic Development v. Baumann,* 9 Ill.App.3d 1, 12 (1972), *rev'd on other grounds,* 56 Ill.2d 382 (1974).) Second, at the close of evidence the plaintiffs' counsel offered in evidence, along with other exhibits, resumes setting forth in detail the expert qualifications of his three opinion witnesses. These exhibits passed into evidence without objection of defendant's counsel, although opportunity for such objection was carefully given by the court. Thus even if the direct testimony as to the witnesses' expert qualifications were insufficient, there is nevertheless in the record unopposed evidence as to their qualifications.

Defendant's last point is that Hines Lumber Company, as a contract purchaser of the subject property, was not a proper plaintiff in this suit. It is sufficient to state that this issue was raised nowhere below and is clearly not a proper subject for review.

Judgment affirmed.

RECHENMACHER, P. J., and DIXON, J., concur.