DuPAGE TRUST COMPANY, Trustee, Plaintiff-Appellee, *v.* THE CITY OF WHEATON, Defendant-Appellant.

Second District (2nd Division)    No. 74-405

Opinion filed May 19, 1976.

Gerald J. Brooks, of Fawell, James & Brooks, of Naperville, for appellant.

Ralph Dichtl, of Wheaton, for appellee.

Mr. PRESIDING JUSTICE THOMAS J. MORAN delivered the opinion of the court:

This appeal arises out of a zoning dispute between the plaintiff, record owner of the property in question, and defendant, the City of Wheaton. Defendant denied plaintiff's sought rezoning and plaintiff filed for declaratory judgment on the basis that defendant's current zoning was unconstitutional and void as to the subject property. The petition was granted and the defendant appeals.

The property, a single 1.84-acre parcel comprised of nine 55-foot lots, is located on County Farm Road, north of Roosevelt Road, in a sparsely developed area of the defendant city. The property is zoned R-1 (single-family residential) although the lots are smaller than R-1 zoning presently requires. A drainage problem in the southwest portion of the property led the defendant (through its Director of Development, Thomas Murphy) to inform the property owner that only four or five building permits could be issued for the property in its present condition. The defendant did not, however, oppose giving permits for all the lots if and when the drainage inadequacies were rectified.

Apparently, no attempt was made to correct the drainage problem in an attempt to secure the nine single-family-residence permits. Instead, Mr. Hitzeman, the beneficial owner of the subject land (held by plaintiff as trustee), drew up plans to develop the property for multifamily use. These plans included the construction of three 13-unit, two-story buildings in the northern segment, with 68 parking spaces, a single entrance for traffic on County Farm Road, and drainage-retention areas in the southern portion.

Application was made to rezone the property from R-1 to R-7 (multiple-family dwellings and limited business uses) and to classify it as a planned unit development (P.U.D.) of more than one building. Although defendant's zoning ordinance requires that certain plans and exhibits be submitted at the time an application is made for a P.U.D., plaintiff did not submit such documents at that time. The rezoning and reclassification application was appropriately noticed for public hearing and, prior to the hearing, Murphy reminded Hitzeman to bring the plans to the hearing. At the hearing, the Board of Zoning Appeals heard evidence, and plaintiff submitted the required plans and exhibits for the P.U.D. After considering the evidence, the Board recommended denial of the request and the defendant followed its recommendation.

Subsequently, plaintiff filed suit for a declaratory judgment. Defendant petitioned for a change of venue, alleging, as a basis, prejudice of the circuit court judge then hearing zoning cases. The trial court denied defendant's petition, and this appellate court denied defendant's application for interlocutory relief from the trial court's order. Inasmuch as the chief judge had changed the assignments of trial judges in the circuit, the cause proceeded to trial on the merits before a circuit judge other than the one complained of in defendant's petition.

The circuit court decreed that defendant's R-1 zoning, as applied to the subject property, bears no reasonable relationship to public health, safety, morals, and welfare, and, as applied to that property, is unreasonable, arbitrary, confiscatory, unconstitutional, and void; that plaintiff's proposed use of the property was suitable and reasonable and should be permitted; and that the defendant is enjoined from preventing plaintiff's proposed use of the property.

Defendant appeals asserting that the trial court erred in denying the defendant's petition for a change of venue on the ground of prejudice; that plaintiff failed to exhuast its administrative remedies; that defendant did not receive a fair and impartial trial due to the prejudice of the trial judge; and that the findings of the court were against the manifest weight of the evidence adduced.

■■ The first issue is moot, as trial on the merits was had before a judge other than the one to whom defendant took objection. It is clear

that a court will consider only actual controversies and will not declare rules of law which cannot affect the matter at issue in the case before it. *Chicago City Bank & Trust Co. v. Board of Education,* 386 Ill. 508, 519-21 (1944); *Board of Trustees v. Cook County College Teachers Union, Local 1600,* 22 Ill. App. 3d 1057, 1059 (1974).

As an affirmative defense, defendant, prior to trial, alleged that plaintiff did not exhaust its administrative remedies before seeking relief in the courts and was therefore barred from such relief. Defendant did not, there or here, specify what further administrative remedy plaintiff was required, but failed, to seek. Defendant's argument is based on plaintiff's failure to comply with a zoning ordinance requirement in that he did not, at the time of making application, supply the plans and exhibits necessary for a P.U.D. permit. This is not properly a question of "failure to exhaust administrative remedies," as plaintiff did appear and did present the required exhibits for consideration by the administrative tribunal.

■■ Defendant could have demanded strict conformity to procedure as a precondition to a hearing on the R-7, P.U.D. application. It did not. Through its representative, Murphy, defendant invited plaintiff to present the exhibits at the time of the hearing before the Zoning Board of Appeals, and the exhibits were so presented. Approximately two months later, defendant denied plaintiff's application. In its brief, defendant admits that this decision was reached "after considering the evidence submitted," and during oral argument defendant agreed that the exhibit requirement in question could be waived. We find that defendant, by its actions, waived strict compliance with its requirement. Defendant's appeal to the doctrine of exhaustion of administrative remedies is misapplied and does not alter the waiver.

Defendant complains that the trial judge displayed prejudice and recurrently acted as an advocate in this case, denying defendant a fair and impartial hearing. Many of the instances pointed to by defendant are merely examples of the trial court's privilege, expanded in a bench trial, to interrogate witnesses in order to obtain a fuller understanding of the case before it. Defendant contends that the court in its questions displayed bias against the Wheaton Land Clearance Commission, which, defendant claims, the court erroneously believed to be an arm of the defendant and a force obstructing development of the subject property. Defendant asserts that such questioning occurred prior to the introduction of evidence regarding the Land Clearance Commission (hereinafter L.C.C.). The record, however, reveals that the court understood the L.C.C. to be a separate municipal corporation with an independent governing board and powers. The record also reveals a statement by appellant's counsel that there had been direct testimony regarding the

L.C.C. and this statement occurred before the objected-to question from the court regarding the L.C.C.

■■ In exploring the possible reasons for this parcel not having been developed, the court initiated certain questions regarding the L.C.C.'s power of eminent domain over the subject parcel and nearby lands, and asked whether the L.C.C. had acquired lands near the subject property. Murphy responded that it had not and was not likely to because the L.C.C. has no taxing power, and the Federal "seed money" (formerly available from urban renewal funds) had either been closed down or impounded. The court asked whether the L.C.C.'s power of eminent domain did not therefore have a depressing effect on the valuation of the property in that area which would hinder its development. Murphy's response indicated that, to the contrary, the L.C.C. had encouraged private developers to accumulate, into larger parcels for economic development, properties with hitherto scattered ownership. The court asked how permitting a proposal such as Hitzeman's would controvert the L.C.C. plans since it was not apparent to the court how the Hitzeman goals and the L.C.C. plans were inconsistent. According to the evidence at this point in the proceedings, we believe that the court's query was reasonable and that it was framed in a manner acceptable to elicit further explanation.

■■ Thereafter, during its inquiry of Murphy, the court observed that the Wheaton Comprehensive Plan for the area designates the subject area for multiple-family or commercial uses. At the conclusion of its inquiry of this witness, the court once again expressed some bewilderment as to how Mr. Hitzeman's proposal was inconsistent with the goals of the L.C.C., saying:

> "It seems to me he's assembled the nine lots, virtually a block of land for development for apparently a higher purpose and a better use and from the other testimony in the case, it seems to me that this was what was being sought there by the Wheaton Land Clearance Commission and that this would appear to have been something in furtherance of their general objects and goals."

Based on the related evidence introduced—the testimony regarding L.C.C. goals and the Wheaton Comprehensive Plan recommendations for the use of the subject property—we believe the court drew a legitimate, if premature, deduction which in a bench trial does not constitute prejudice.

■■ Defendant alleges prejudice in the court's refusal to admit into evidence a proposed amendment to the Wheaton Comprehensive Plan, although the plan itself had been admitted. Defendant stated that the amendment, which had not been adopted by any official action, was offered merely to show that the Wheaton Comprehensive Plan was a

malleable document, subject to change. The fact had already been testified to by one of the witnesses. Moreover, the judge stated that counsel for defendant had already convinced the court that the Comprehensive Plan was subject to change and that change was being considered. Thus the court stated that it had already accepted as proven the fact for which defendant attempted to introduce the proposed amendment. Under these circumstances, we fail to see how the refusal to admit the exhibit can now be claimed prejudicial.

In its final allegation of error defendant complains that the decision of the trial court was against the weight of the evidence adduced at trial. It should be noted that defendant has utterly failed to set out an adequate statement of facts with appropriate references to the record, as required by Supreme Court Rule 341(e)(6) (Ill. Rev. Stat. 1975, ch. 110A, §341(e)(6)), to aid this court in the determination of this issue. Defendant merely cites the well-worn proposition of zoning law that where there exists a difference of opinion concerning the reasonableness of a classification there is a presumption in favor of the defendant's determination. In support of this presumption, defendant states that one of plaintiff's own witnesses testified that a lesser zoning intensity might be more desirable than that proposed. A close look at the record shows, however, that this expert witness agreed only that R-6 (single- and multi-family dwelling plus light-commercial zoning, somewhat less dense than R-7) would perhaps be more appropriate than R-7. This witness denied that R-5 (single- and multi-family dwellings somewhat still less dense than R-6) would be more appropriate than R-7, and thus by implication clearly denied the appropriateness of R-1 zoning for this property. Moreover, a review of all the evidence reveals it was not disputed that the subject property is suitable for multi-family dwellings and for higher density housing than presently zoned. This was admitted by the defendant's own expert witness, Murphy.

In *Hoekstra v. City of Wheaton*, 25 Ill. App. 3d 794, 798 (1975), *appeal denied*, 58 Ill. 2d 596 (1975), this court pointed out:

> "[T]hough the present zoning classification does not represent the highest and best use of the land in question this is not a basis for finding it invalid [citation], *but in order to sustain its validity in a case where another use of the land is clearly more appropriate, it does have to be shown that the restriction is reasonably related to the public health, safety or morals.* [Citation.] This is, of course, especially true where the loss to the owner of the land is much greater than the benefit to the public. \* \* \* (Emphasis ours.)

Under these circumstances, the burden of proof is on the proponent of present zoning. *Edward Hines Lumber Co. v. Village of Villa Park*, 34 Ill. App. 3d 711, 717 (1976).

The subject property is bounded on the north by Williams Street, on the east by County Farm Road, on the west by vacant land and one single-family home, and on the south by a Shell service station which fronts on Roosevelt Road, a major regional thoroughfare. To the southwest is a former service station now used by Standard Oil for vocational training. Although the bulk of the surrounding area is zoned R-1, the area is only sparsely populated with single-family residences, with no construction of this type since 1969. Two blocks north on County Farm Road is a nursing home (zoned R-7), and just north of that is located the recently enlarged County Complex, a multistructure office complex.

An apparent reason for the relative sparseness of residential development is the high cost of bringing water and sewer service to this area. The evidence tended to show this cost to be very high on a per-frontage-foot basis, for either single-family connections or connections suitable for multiple housing units. Obviously, since there would be a maximum of nine single-family residences, compared with 39 living units as proposed, the per-living-unit cost for bringing these services in would be significantly higher for single homes. Expert testimony suggested that the total worth of the property as zoned is $10,000 to $15,000, whereas its worth under the proposed zoning would be $60,000 above the cost of sewer installation.

■■ There is no evidence in the record that a substantial public interest would be served by denial of the proposed use. Defendant failed to meet its burden of showing that the retention of the present zoning classification is required for the public health, safety or morals. Indeed, such evidence as there was in this regard tended to show the opposite: it indicated that the proposed use with its single driveway would present a relatively less hazardous situation than might occur under the present zoning (nine separate driveways with egress onto County Farm Road); that there was a need for additional multiple-family housing in Wheaton and, more particularly, near the County Complex; and that the proposed use, with its two-story buildings, provides a good buffer between the commercial establishments on Roosevelt and the residential uses to the north. There was evidence that the proposed use would generate somewhat more traffic than single-family residences, but there was no indication that the additional traffic would be detrimental. An expert calculated a somewhat higher school-age population would arise from the proposed use than from the nine single-family residences, but this witness also demonstrated that the expanded tax base provided by the proposed use would more than offset the increased educational expenses arising out of the development.

We conclude, as we did in the *Hoekstra* case, "that the presumption of the validity of the ordinance as to this particular tract of land has been

overcome because of: (a) the concensus that the present zoning classification is not the highest and best use of the land; (b) the lack of any evidence that the proposed change in classification would adversely affect the surrounding community; (c) the disproportion between the gain to the public and the loss to the property owner in maintaining the present zoning, and (d) the city's failure to show that the retention of the present zoning classification is required for the public health, safety or convenience." *Hoekstra v. City of Wheaton*, 25 Ill. App. 3d 794, 799 (1975).

Accordingly, the decision of the trial court was not against the manifest weight of the evidence, and the judgment of that court is affirmed.

Judgment affirmed.

RECHENMACHER and DIXON, JJ., concur.