AMERICAN NATIONAL BANK & TRUST COMPANY OF ROCKFORD,
Trustee, Plaintiff-Appellee, *v.* THE CITY OF ROCKFORD,
Defendant-Appellant.

Second District   No. 76-386

Opinion filed December 28, 1977.

A. Curtis Washburn and James G. Smith, both of Rockford, for appellant.

Frank P. Maggio, of Rockford, for appellee.

Mr. JUSTICE BOYLE delivered the opinion of the court:

American National Bank & Trust Company of Rockford, as Trustee of Trust 68-4826, hereinafter "plaintiff," petitioned the City of Rockford, hereinafter "defendant," for a special use permit to allow plaintiff to use the subject property in two ways: (1) a portion was to be used for light industry; and (2) a portion was to be used as a restricted landing area for airplanes. The plaintiff's request, however, was denied by the city council of Rockford.

The plaintiff then brought a declaratory judgment action in the trial court, requesting that defendant's ordinance be declared null and void as applied to its property and that the trial court enter an order to (1) permit a portion of the subject property to be utilized for light industrial use and (2) allow a portion of the premises to be used as a restricted landing area. The trial court found that the present zoning of plaintiff's unimproved real estate was unreasonable and capricious; was not compatible with the surrounding geographical area; was not the highest and best use of the property; and bore no relationship to the public health, morals or reasonable safety. The trial court further held that both of plaintiff's requests for a restricted landing area and for light industrial use were reasonable and compatible with the geographical area and, in addition, were the highest and best uses for the subject property. Defendant appeals only from that portion of the judgment order which declared this ordinance null and void as applied to the requested use as a restricted landing area.

Defendant's argument on appeal is in substance that the trial court substituted its judgment for that of the city council of Rockford, which, defendant claims, acted reasonably and for the general welfare of the community. We disagree.

The real estate at issue is approximately 23 acres of a 34-acre tract located in the northwest quadrant of the city of Rockford, immediately north of Elmwood Road, and lies within 200 feet of the Rock River. Immediately west of the property is an industrial park, while approximately 25 single-family residences are to the east, adjacent to the river. The property to the immediate south of the subject land is zoned and used for industrial purposes, while the property to the north is used for agricultural purposes. The concerned tract is presently zoned R-1 through R-4, which would allow 15 multifamily units per acre.

Prior to the city council's denial of its petition, the plaintiff's request for

a special use permit for a restricted landing area had been unanimously granted by the Rockford Zoning Board of Appeals. The City-County Planning Commission of Rockford and Winnebago County also had reviewed plaintiff's zoning petition and had recommended that this request for a restricted landing area be granted.

David Atkins, who was the principal planner for the City-County Planning Commission, testified for the plaintiff at trial that the subject property was in a flood-plain area and that one of the permissible uses of a flood-plain area is a private airport landing strip. He said that if the property were developed as its present residential zoning allowed, the flood-plain nature of the area would have a detrimental effect on the development of the area for residential purposes. In addition, he testified that the traffic situation in the area would not be harmed by the proposed restricted landing area.

Norris K. Levis, a real estate appraiser and broker in Rockford, testified for the plaintiff at trial that the present residential zoning was unreasonable because of the flood-plain nature of the property, the undeveloped nature of the property for a period of time, the lack of interested buyers, and the economic nonfeasibility of developing a multifamily real estate development in Rockford at that time. He also testified that the plaintiff's proposed zoning was reasonable and the highest and best use of the subject property. He further testified that the value of the property as presently zoned (R-1 through R-4) was $67,900, and that the value of the real estate, if it were rezoned as plaintiff requested, would be $101,800.

Theodore S. Ingrassia, Jr., a real estate broker in Rockford who handled the subject property since 1968, testified for the plaintiff that he had been unable, despite developmental efforts including bringing in sewer and water to the property, to market this property for residential development. He testified he had been limited in developing he property for residential use because of the flood-plain character of the property and that he had never received an offer on the subject property under its present residential zoning.

Alderman Dennis Johnson, a licensed pilot who voted in favor of the proposed zoning in the city council, testified for the defendant at trial that the city of Rockford did not desire to have residential developments in flood-plain areas. He further testified that he was in favor of plaintiff's proposed use of the subject property as a restricted landing area, even though it was in his ward. Alderman Dale Skolrood, who testified for the defendant, was the only witness to testify at trial against the plaintiff's proposed special use. He primarily objected to the proposed restricted landing area because of the safety factor and the detrimental effect on the people in the surrounding area.

Burrille Coppernoll, a flight safety coordinator employed by the Illinois Department of Transportation, Division of Aeronautics, testified for the plaintiff that if the defendant granted plaintiff's requested zoning change, a hearing would be held in the Rockford area on plaintiff's application for a certificate for a restricted landing area. He testified that a certificate would not be issued by the Aeronautics Division unless the property had been approved as to its safety to land upon, take off, and its overall safe operation as a landing field. He further testified that some of the restrictions on plaintiff's proposed use included that there be no commercial operation of any kind out of the landing area and that there be no student instruction or the carrying of passengers for hire. An additional restriction would be that there be no sale of aircrafts or petroleum products, although plaintiff's application for a certificate before the Aeronautics Division did request a waiver of the latter restriction. He also testified that he had examined the subject property and that based on plaintiff's proposals for development of the property, plaintiff's experience, and the types of single-engine airplanes that would be used, as well as a ground and aerial view of the property, he was of the opinion that a safe operation of this property as a restricted landing area could be established. He also stated that at the present time there are 600 restricted landing areas in the State of Illinois.

■■ It is axiomatic that a zoning ordinance is presumed to be valid, and the party assailing it must establish by clear and convincing evidence that the classification as applied to the subject property is arbitrary and unreasonable. (*Pioneer Trust & Savings Bank v. County of McHenry* (1968), 41 Ill. 2d 77, 241 N.E.2d 454; *Tomasek v. City of Des Plaines* (1976), 64 Ill. 2d 172, 354 N.E.2d 899; *Coney v. County of Du Page* (1977), 51 Ill. App. 3d 980, 367 N.E.2d 152.) As this court recently stated:

"The traditional tests under which zoning determinations are reviewed include in general terms, the character of the neighborhood as shown by existing uses and zoning of nearby property, the extent to which surrounding property will be depreciated by the proposed use, the suitability of the subject property for the zoned purposes, and the extent to which the destruction of the value of the plaintiffs' property is required by considerations of the public interest in promoting the health, safety and welfare of the community (which includes consideration of the care which the public has undertaken in planning its development and the needs of the community). [Citations.]" *Continental Homes of Chicago, Inc. v. County of Lake* (1976), 37 Ill. App. 3d 727, 733-34, 346 N.E.2d 226, 231.

■■■ The purpose of the special use permit at issue here is to provide various necessary and desirable land uses which are possibly

incompatible with other permissible residential, commercial, and industrial classifications. (*Pioneer Trust & Savings Bank v. County of McHenry* (1968), 41 Ill. 2d 77.) Although the defendant herein, in the exercise of its legislative function, is, not required to follow any set standards in determining whether to grant this special use, its decision is reviewable by the courts. (*La Salle National Bank v. County of Lake* (1975), 27 Ill. App. 3d 10, 325 N.E.2d 105.) Furthermore, the defendant's denial of a special zoning classification will be upheld on appeal only if it bears any substantial relationship to the public's health, welfare, safety or comfort. (*Tomasek v. City of Des Plaines* (1976), 64 Ill. 2d 172; *Lazarus v. Village of Northbrook* (1964), 31 Ill. 2d 146, 199 N.E.2d 797.) If the gain to the public is minute as compared to the hardship imposed on the owner of the subject property, the ordinance is invalid as an improper exercise of police power. *La Salle National Bank v. County of Cook* (1963), 28 Ill. 2d 497, 192 N.E.2d 909; *Du Page Trust Co. v. City of Wheaton* (1976), 38 Ill. App. 3d 159, 347 N.E.2d 752.

■■ Our determination as to whether this particular zoning classification is reasonable as applied to plaintiff's property depends upon, as in all zoning cases, the particular facts involved. (*Hartung v. Village of Skokie* (1961), 22 Ill. 2d 485, 177 N.E.2d 328.) In the instant case, plaintiff presented expert evidence that the subject property was located in a flood-plain area, that its present zoning classification of multifamily residential was economically unfeasible and resulted in a substantial decrease in the value of the property, as well as its remaining in its undeveloped state for a long period of time. Only one of defendant's two witnesses at trial, Alderman Skolrood, objected to plaintiff's proposed use. His objection was based upon the safety of such a landing area and the resultant disruption of the public peace and tranquility. As has been said many times before, it is for the trial court to determine the credibility of the witnesses and the proper weight to be given their testimony. Because of the trial judge's superior position, this court will not overturn his decision or finding in a zoning case unless it is contrary to the manifest weight of the evidence. (*Wheeling Trust & Savings Bank v. County of Lake* (1975), 31 Ill. App. 3d 636, 642, 333 N.E.2d 705, 710-11.) In the instant case we cannot say that the trial judge's findings are against the manifest weight of the evidence, and, accordingly, we must affirm.

■■■ We are also of the opinion that Alderman Skolrood's objections to the safety of this proposed restricted landing area are not reasonable and justifiable based on this record, in light of the preliminary safety determination made by the Aeronautics Division of the Illinois Department of Transportation, and the further safety studies that will be conducted by that department prior to the issuance of a certificate for a restricted landing area. (*Aurora National Bank v. City of Aurora* (1976),

41 Ill. App. 3d 239, 353 N.E.2d 61.) Therefore we hold that the defendant's ordinance is null and void in its application to plaintiff's property and that the denial of plaintiff's petition for a special use results in a substantial decrease in the value of plaintiff's property—which is clearly unreasonable, arbitrary and confiscatory and bears no substantial relationship to the public health, safety, welfare or comfort. *People ex rel. Larsen & Co. v. City of Chicago* (1962), 24 Ill. 2d 15, 179 N.E.2d 676; *Frelk v. County of Kendall* (1976), 44 Ill. App. 3d 253, 357 N.E.2d 1325.

The judgment of the circuit court of Winnebago County is affirmed.

Judgment affirmed.

SEIDENFELD and WOODWARD, JJ., concur.