WILLIAM J. BJORK et al., Plaintiffs-Appellants, v. THE DEPARTMENT OF TRANSPORTATION et al., Defendants-Appellees.

Second District    No. 79-350

Opinion filed April 9, 1980.

172

William C. Jackson, of Barrick, Jackson, Switzer, Long & Balsley, of Rockford, for appellants.

William J. Scott, Attorney General, of Chicago, and Frank P. Maggio, P. C., of Rockford, (Russell C. Grimes, Jr., Assistant Attorney General, of counsel), for appellees.

Mr. JUSTICE UNVERZAGT delivered the opinion of the court:

This is an appeal from a judgment of the circuit court affirming the decision of the Division of Aeronautics, Illinois Department of Transportation, to grant John R. Martin a certificate of approval for operation of a restricted landing area.

Martin applied for a certificate to operate a restricted landing area in 1975. At that time the minimum effective length of a landing strip was 1,200 feet. (Effective length means the length after deducting 15 feet for each foot of height of obstructions within the perimeter of the area—thus a 40-foot tree would decrease the effective length of the strip by 600 feet.) When Martin applied in 1975 for a certificate of approval to operate the restricted landing area, it was tentatively approved, subject to Martin's burying below ground some power lines at one end of the property. Notice of the intention of the Division of Aeronautics to approve the application was published by newspaper in September of 1975 as required by statute. The purpose of the publication was, of course, to give interested parties, such as neighboring property owners, an opportunity to voice their objections at a public hearing prior to final approval of the application for a certificate to operate. Several nearby property owners objected, as well as the city of Rockford, on the ground the operation of the restricted landing area on Martin's property would violate the city of Rockford zoning ordinance. After a hearing, the circuit court held that the Rockford zoning ordinance was null and void as applied to the use of Martin's property for a restricted landing area. Upon appeal, this court

affirmed. *American National Bank & Trust Co. v. City of Rockford* (1977), 55 Ill. App. 3d 806.

After this court affirmed the zoning decision of the circuit court, Martin sought final approval for his certificate to operate the restricted landing area, and several of the nearby property owners objected again— this time on the ground that the operation of the landing area was not safe. After a hearing, a final administrative order was issued by the Division of Aeronautics in July of 1978 approving the application of Martin for operation of the restricted landing area. The plaintiffs, nearby property owners, contend in this appeal that the effective length of the landing strip would be a bare 1,200 feet even if the changes were to be made which were first indicated by the Division of Aeronautics to be necessary in 1975; that is, the taking down and burying underground of certain power lines at one end of the property. However, while 1,200 feet would have been an approved length in 1975, the objectors point out that the requirements as to the effective length of the runway strip were changed in May of 1976 to require an effective length of 1,600 feet. This greater length could not be complied with because of trees at the edge of the property and a road along one side, which at a ratio of 1 foot of height to every 15 feet of length, cut down the effective length of the landing strip to less than 1,600 feet.

The plaintiffs argue that since final approval of the certificate for operation of the landing area was not given until 1978, and the regulations of the Division of Aeronautics were changed in 1976 to provide for 1,600 feet of effective length, the notice of intent to approve the restricted landing area which was given in 1975 before the final hearing, was subject to the 1976 requirement. Martin on the other hand contends that the notice of intent to approve the application given by the Division of Aeronautics in 1975 entitled him to a certificate based on the 1975 required length of 1,200 feet, that this was a "right" given to him at the time the 1,200 foot requirement was in effect and cannot be abrogated by a subsequent change in the regulations of the Division of Aeronautics. In support of this argument Martin cites an excerpt from the language of section 64 of the Illinois Aeronautics Act (Ill. Rev. Stat. 1977, ch. 15½, par. 22.64) reading as follows:

> "A rule, ruling, regulation, order or decision made after such rehearing, amending, changing, abrogating, or rescinding the original rule, ruling, regulation, order or decision, shall have the same force and effect as the original rule, ruling, regulation, order or decision, but shall not affect any right or the enforcement of any right arising from or by virtue of the original rule, ruling, regulation, order or decision unless so ordered by the Department."

However, the portion of section 64 cited by the appellee, Martin, gives an entirely erroneous idea as to the thrust of the statute. Actually, the first paragraph of section 64 gives the Department of Transportation authority to amend, change, abrogate or rescind any rule, ruling, regulation or decision or order made by it provided "notice and an opportunity to be heard [is given] to the persons, municipalities, or other political subdivisions to be affected thereby * * *." (Ill. Rev. Stat. 1977, ch. 15½, par. 22.64.) Since no issue is raised here as to whether or not the department gave notice and an opportunity to be heard regarding the change here noted in the required length of the landing strip, that point is waived, and we may assume that the department rightfully and legally changed its regulations regarding the required clear distance for a restricted landing area. Thus it seems to be established that the department had the power, and lawfully exercised it, to alter the regulations as to the length of the landing strip. The major part of section 64 concerns the requirements and limitations in connection with applications for a *rehearing*. The second paragraph of the section, after referring to procedure for rehearing, specifically refers to a ruling or order "made after such rehearing." Ill. Rev. Stat. 1977, ch. 15½, par. 22.64.

Thus, the thrust of the language of section 64 is directed to *rehearings*. Section 64 undoubtedly gives a person affected by an amendment or change in the regulations an opportunity to be heard, but the statute provides that the changed rule or regulation "shall have the same force and effect as the original rule, ruling, regulation, order or decision * * *" as the original, with the further qualification that the new rule or regulation "shall not affect any right or the enforcement of any *right* arising from or by virtue of the original rule * * *." (Ill. Rev. Stat. 1977, ch. 15½, par. 22.64.) (Emphasis added.) It is clear, then, that in order to invoke the provisions of section 64 of the Illinois Aeronautics Act, the person affected thereby must (a) apply for a rehearing as to the new rule or regulation or (b) must establish in his challenge to the new rule or regulation that he had a "right" arising from or by virtue of the original "rule, ruling, regulation, order or decision." There is no evidence in the record before us that the appellee, Martin, ever challenged the new regulation through a request for a rehearing, and therefore it appears that the new regulation cannot be challenged unless Martin, as "the person affected thereby," had acquired a *right* arising from or by virtue of the original "rule, ruling, regulation, order or decision * * *."

■■ In the case before us, Martin seeks to avoid the effect of the new length requirement without ever having challenged it through a request for rehearing, and it must be assumed that he is, therefore, relying on a "right" conferred on him by virtue of the published notice in 1975 by the

Division of Aeronautics of an "intent" to grant the certificate of approval for the restricted landing area. This, however, was obviously only a preliminary step required by statute in order to give notice to possible objectors. Safety considerations were pertinent and vital to the surrounding neighbors, and it is obvious that the publication of a notice of "intent" to grant the certificate of approval was only a first step, and it did not confer any right on Martin. If the notice of intent had conferred a right in Martin to operate the airstrip in question, it would, of course, not be necessary or even proper to proceed to hear the objectors and consider their arguments contrary to Martin's application. Thus we see no validity to the argument that the Division of Aeronautics or the Department of Transportation is abrogating an established right or privilege granted to Martin at a date preceding the adoption of the 1,600-foot requirement for a restricted landing area. The letter of intent issued in 1975 established no right but merely set the machinery in motion for a final determination as to the granting of the certificate to operate.

Moreover, the contention of Martin that the 1975 regulation as to length requirement of the runway strip takes precedence over the 1976 regulation in connection with a proceeding conducted in 1978 seems to be at odds with established Illinois law. The privilege of operating a restricted landing area is neither a vested property right nor a right conferred on a citizen by the constitution. In *People ex rel. Foote v. Clark* (1918), 283 Ill. 221, 225, the rights of a party acquired under a statute passed in 1913, regarding the width of roads, was abrogated by an amendment passed in 1917. The supreme court said:

"The legislature, however, cannot pass a retrospective or an *ex-post facto* law impairing the obligation of a contract, nor can it deprive a citizen of any vested right, by a mere legislative act. [Citation.] This is a principle of general jurisprudence, but a right to be within its protection must be a vested right. It must be something more than a mere expectation, based upon an anticipated continuance of the existing law. It must have become a title, legal or equitable, to the present or future enjoyment of property or to the present or future enjoyment of the demand, or a legal exemption from a demand made by another. If, before rights become vested in particular individuals, the convenience of the State induces amendment or repeal of the laws, these individuals have no cause to complain.' (1 Lewis' Sutherland on Stat. Const.—2d ed.—sect. 284. See, also, R. C. L. 308, 309.)" (283 Ill. 221, 225.)

To the same effect is *People ex rel. Eitel v. Lindheimer* (1939), 371 Ill. 367.

While these are legal grounds for rejecting the contention that the defendant has acquired a right which cannot be affected by subsequent

changes, there is an even more telling objection to this argument. This is the fundamental consideration of safety. Section 25 of the Illinois Aeronautics Act (Ill. Rev. Stat. 1977, ch. 15½, par. 22.25) states as follows:

> "It is hereby declared that the purpose of this Act is to further the public interest and aeronautical progress by providing for the protection and promotion of safety in aeronautics * * *."

Since the "promotion of safety in aeronautics" is a fundamental purpose of the Act, it can hardly be doubted that the adoption of a safer regulation is intended to and rightly does supersede the earlier less safe rule. To hold otherwise is to set the defendant's personal interest above the intention of the Act to promote greater safety in aeronautics.

Martin also invokes Rule 59 of the Division of Aeronautics regarding waivers, which reads as follows:

> "59. WAIVERS. The Department may, in its discretion, waive strict compliance with any paragraph or subparagraphs of Chapter 7 of these regulations or connection with any particular application or Petition for a Waiver subject to the conditions hereinafter set forth.
>
> All Petitions for a Waiver shall be on forms prescribed by the Division of Aeronautics, shall be sworn to by the applicant and shall contain a clear concise statement of the facts together with a prayer that a certain regulation be waived. Requests for Waivers may also be incorporated into an application for a restricted landing area or for an extension or alteration of an existing restricted landing area."

It is Martin's contention that under this rule the Division of Aeronautics can and does occasionally waive the length requirement of restricted landing areas. We do not consider that a waiver of "strict" compliance with certain unspecified regulations may be reasonably construed as a probability that the rule would justify a *25-percent deviation (1,200 feet instead of 1,600 feet) from a normal safety* standard. In any event, however, the question of waiver appears to be irrelevant here because no waiver as to length requirement was requested by Martin so far as the record discloses, and thus no formal waiver of this requirement was ever granted by the Division of Aeronautics. Whether, if faced with a formal request for a waiver of the length requirement, the Division would have granted it—especially in the face of its inconclusive "findings" as indicated below—is, we think, too speculative to be considered as a valid basis for granting the operating certificate. In short, if the 1,600-foot requirement applies to Martin's application, the argument of waiver is misplaced because there is no evidence that a written waiver was ever requested or granted as to the length

requirement—which is not surprising since the waiver of a safety requirement is probably not lightly asked or easily given.

While it is stated in the appellee's brief that the effective length of the landing strip would be 1,675 feet if certain trees and the highline were removed, there is no basis for supposing that the trees in question *would* be removed, since they are on another person's land. Moreover, it is indicated in the appellants' brief that there is a restrictive covenant against removing said trees, and it seems probable the owner of the trees would not be receptive to the idea of cutting them down. Also, as pointed out by the appellants, the facts as to the actual effective length of the runway are in dispute, and the findings of the Division of Aeronautics both as to the height of certain trees and the length of the strip itself (because the width requirement cuts off a piece of the runway at certain angles) were never found with any definiteness by the Division of Aeronautics. Indeed, the Division's order granting the application, specifically finds that "at present the proposed site will not meet the 1200-foot effective length requirement *but could if* the power line on the south were removed and buried and obstructions lowered on the north"; "* * * that the physical characteristics of the proposed site of the restricted landing area is such that the applicant has approximately 1900 feet in length, although at present the effective length is somewhat less than 1200 feet, it *appears* that applicant can obtain the required 1,200 feet in effective length provided the obstructions at the south end are removed or buried and the trees at the north end are lowered or removed. In lieu of removing the trees on the north it may be possible for applicant to obtain the required effective length by filling in and raising the ground level at the south end of the property." (Emphasis added.)

These speculations cannot be considered findings of facts sufficient to support the Division's order granting approval of the application. It is suggested in appellee's brief that certain findings which are inconclusive at present would be confirmed by the Division's representative, Mr. Coppernoll, independently at a later date, but we think the appellants have a valid objection to such procedure since certain measurements are seriously disputed by the parties and an *ex parte* finding at a later date by the Division's employees would allow no opportunity for cross-examination as to the basis of such findings or even, in fact, an opportunity to object to the findings themselves. In view of the evidence offered contrary to some tentative findings of the Division's employee, it appears the relegation of certain determinations of fact to the Division's representative is properly objected to by the appellants.

These, however, are technical objections, and while we think they are valid, the overriding consideration here and the determining factor in

our consideration of this case is *safety*. We have adverted to this above, and we think it proper to emphasize it by reference to section 28 of the Illinois Aeronautics Act (Ill. Rev. Stat. 1977, ch. 15½, par. 22.28), which governs the actions and decisions of the Division of Aeronautics, which reads as follows:

> "In exercising its powers and performing its functions under the laws of this State pertaining to aeronautics, the Department may perform such acts, issue, amend, change, abrogate or rescind such decisions and orders, prescribe such forms, and make, promulgate, and amend, change, abrogate or rescind such reasonable general or special rules, rulings, regulations, and procedure, and establish such minimum standards, as may be necessary, commensurate with and for the purpose of protecting and insuring the *general public interest and safety * * *.*" (Emphasis added.)

It seems obvious from the above language that the Division's power to change, amend, *etc.* its rules is all one way—in the direction of *safety*. Thus it is logical to suppose that a previous regulation should be regarded as being overridden by a later regulation which provides a greater measure of safety, where the final decision had not been made prior to the adoption of the safer standard.

Section 29 of the Illinois Aeronautics Act (Ill. Rev. Stat. 1977, ch. 15½, par. 22.29) is also persuasive in this regard in its reference to Federal standards. It provides as follows:

> "All rules, rulings, regulations, orders and decisions prescribed by the Department pursuant to the laws of this State pertaining to aeronautics, shall be kept in conformity, as nearly as may be, with the then current federal legislation governing aeronautics and the regulations duly promulgated thereunder and rules and standards issued from time to time pursuant thereto."

The plaintiffs' attorney introduced into the record of the hearing a letter from the Acting Chief—Planning Section—Chicago Airport District Office, Federal Aviation Division, addressed to the defendant Martin indicating his recommendation that the "runway thresholds be located so as to provide a minimum 20 to 1 obstacle clearance for all obstructions in the approach area." Mr. Coppernoll, the investigator for the Division for Aeronautics, thought this letter was only a "suggestion." However, it seems obvious that a standard based on safety considerations should be treated as more than a mere suggestion. It does not appear in view of the language of section 29 of the Illinois Aeronautics Act requiring the State agency to follow the Federal standards, rules, regulations, etc., that the Federal standards can be summarily disregarded. In this case, however, not only did the Division of Aeronautics disregard Federal standards, but it reached back to invoke a rule which was abrogated two years before

the hearing of August 1978 by the Illinois Division of Aeronautics itself, by allowing a runway which even with suggested improvements will fall far short of the current State requirements and even further short of the Federal standards.

■■ With these considerations in mind, it appears to us the new and safe rule as to the required length of the landing strip should apply to the pending application, and the application should be denied.

The judgment of the circuit court of Winnebago County is therefore reversed.

Judgment reversed.

WOODWARD and VAN DEUSEN, JJ., concur.