**UNITED STATES of America, Plaintiff,**

v.

**The CITY OF BLUE ASH, OHIO, the City Council of the City of Blue Ash, the Mayor of the City of Blue Ash, Raymond L. MacNab, the Solicitor for the City of Blue Ash, Robert T. McConaughy, Defendants.**

**No. C–1–77–470.**

United States District Court,
S. D. Ohio, W. D.

Feb. 7, 1978.

Gerald F. Kaminski, Asst. U. S. Atty., Cincinnati, Ohio, Larry Moore, Dept. of Justice, Washington, D. C., for plaintiff.

Lawrence A. Kane, Jr., Cincinnati, Ohio, for defendants.

### MEMO ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

HOGAN, District Judge.

This is an action brought by the United States to permanently enjoin the City of Blue Ash, Ohio and its officials from enforcing Section 99.03 (eff. September 15, 1977) of the Blue Ash Code of Ordinances and to declare that section invalid. The claim is that the area dealt with by the section has been preempted by the Federal Government under the Supremacy Clause, United States Constitution, Art. VI, Cl. 2.

Cross-motions for summary judgment have been filed and briefed.

The material facts are not in dispute. The Cincinnati-Blue Ash Airport is owned by the City of Cincinnati and is operated by the Hamilton County Regional Airport Authority, and is located with the City limits of the City of Blue Ash. It does not have its own air traffic control tower and air traffic in and out of the airport is controlled by the Federal Aviation Administration—

> Aircraft flying under instrument flight rules by the Greater Cincinnati Control Facility FAA Radar; Aircraft flying under visual flight rules by Federal Aviation Regulations.

See generally 14 C.F.R. 91.61, et seq.

The ordinance involved, as passed by the City of Blue Ash, Section 99.03, deals with "Noise Abatement Turns" which, for the express purpose of controlling aircraft noises over the City of Blue Ash, requires aircraft departing the airport to make a turn to a given heading prior to reaching a described location. Specifically the section provides as follows:

> (a) Except as otherwise (i) directed by Federal Aviation Administration Air

Traffic Control, (ii) when operating in accordance with an Instrument Flight Rules (IFR) clearance or (iii) lawfully directed by State of Ohio or local officials, every person operating an aircraft taking off on Runway 24 at the Cincinnati-Blue Ash Airport shall turn from the take-off heading to a west heading prior to reaching a plane perpendicular to the extended centerline of said Runway 24 2,000 feet beyond Plainfield Road measured along said extended centerline.

(b) Except as otherwise (i) directed by Federal Aviation Administration Air Traffic Control, (ii) when operating in accordance with an Instrument Flight Rules (IFR) clearance or (iii) lawfully directed by State of Ohio or local officials, every person operating an aircraft taking off on Runway 6 at the Cincinnati–Blue Ash Airport shall turn from the take-off heading to a north heading prior to reaching a plane perpendicular to the extended centerline of said Runway 6 2,000 feet beyond Glendale-Milford Road measured along said extended centerline.

The section is sanctioned by penal provisions ($100.00 fine per violation).

It is noted that the section contains exceptions, including operations directed by F.A.A. Air Traffic Control.

There is no actual present specific conflict between any existing Federal Regulation and Section 99.03. While not as stringently specific as Section 99.03, the turns to the particular headings are included in the advisory Airman's Information Manual, published by the F.A.A., and are included in I.F.R. clearances relayed through the Cincinnati Flight Service Station (F.A.A.).

The defendants concede that the "area" dealt with by Section 99.03 is noise control of aircraft in flight in navigable air space. The defendants contend, however, that *City of Burbank v. Lockheed*, 411 U.S. 624, 93 S.Ct. 1854, 36 L.Ed.2d 547 (1972), is inapplicable; that there are factual differences. The defendants point out that the Blue Ash Airport has no Control Tower, is not served by any certified air carrier, has no regularly scheduled flight operations; that the Sec-

tion is concerned with operations in uncontrolled air space and that the section is consistent with the determinations of the airport proprietor and the F.A.A. advisories.

It is the conclusion of this Court that the Section is invalid under the preemption doctrine. The Section does, on its face, exercise control over aircraft in flight, i. e., it dictates flight in a given course in a defined navigable air space.

Under 49 U.S.C. § 1508

"The United States of America is declared to possess and exercise complete and exclusive national sovereignty in the airspace of the United States . . . ."

Under 49 U.S.C. § 1348, the regulation and management of the navigable air space is under the control of the Federal Government, exercised by the F.A.A. "The Administrator is . . . directed to prescribe air traffic rules and regulations governing the flight of aircraft . . . ."

Elaborate regulations have been promulgated pursuant to the statutory directive and all aircraft flights must be conducted in accord therewith. See 14 C.F.R. 91.61 through 109; 115 through 129.

Also, without question, the purpose of the flight direction is noise abatement. In the *City of Burbank*, the Supreme Court reviewed at length the Federal Aviation Act, 49 U.S.C. 1301 et seq., the regulations thereunder and the relevant section of the Noise Control Act of 1972, as well as the National Environmental Policy Act and concluded flatly that

"It is the pervasive nature of the scheme of federal regulation of aircraft noise that leads us to conclude that there is pre-emption. As Mr. Justice Jackson stated, concurring in *Northwest Airlines v. Minnesota*, 322 U.S. 292, 303, 64 S.Ct. 950, 956, 88 L.Ed. 1283 'Federal control is intensive and exclusive. Planes do not wander about in the sky like vagrant clouds. They move only by federal permission. . . . under an intricate system of federal commands. The moment a ship taxis onto a runway it is caught up in an elaborate and detailed system of controls.' "

The most appealing argument of the defendants is based on the lack of present specific conflict between the Section and the Federal Regulations. It is true that the majority in *Burbank* made reference to a Senate Report dealing with the 1972 Act, which stated

> "States and local governments are pre-empted from establishing · or enforcing noise emission standards for aircraft unless such standards are identical to standards prescribed under the bill."

The Court, however, did not, as defendants suggest, adopt that conclusion with respect to conflict but rather decided

> "Control of noise is, of course, deep seated in the police power of the states. Yet the pervasive control vested in C.P.A. and F.A.A. under the 1972 Act seems to us to leave no room for . . . local controls . . .. We are not at liberty to diffuse the powers given by Congress to F.H.A. and E.P.A. by letting the States or municipalities in on the planning."

Further, the questions of both preemption and conflict were considered· by the Supreme Court and the Court of Appeals in *Burbank* as separate and, as the Supreme Court noted (411 U.S. p. 626, 93 S.Ct. p. 1856)

> "The Court of Appeals held that the Burbank ordinance conflicted with the runway preference order . . . issued by the FAA . . .. Control Tower . . .. In view of our disposition of this appeal under the doctrine of preemption, we need not reach this question."

It follows that *City of Burbank* requires that a municipal ordinance resting on police power, which manages or dictates action by aircraft in navigable airspace for the purpose of noise control,[1] is invalid under the preemption doctrine.

---

1. This case does *not* involve an ordinance of a proprietor, nor does it involve ordinances resting on purposes other than noise control.