RONALD G. WRIGHT et al., Plaintiffs-Appellants, v. THE COUNTY OF WINNEBAGO, Defendant-Appellee.

Second District   No. 77-359

Opinion filed June 22, 1979.

338

RECHENMACHER, J., dissenting.

James W. Keeling, of Thomas & Thomas, of Rockford, for appellants.

Daniel Doyle, State's Attorney, of Rockford (James M. Hess, Assistant State's Attorney, of counsel), for appellee.

Mr. JUSTICE GUILD delivered the opinion of the court:

Plaintiffs, Ronald and Patricia Wright, are owners of property in Winnebago County presently zoned for agricultural use. In May 1976 Ronald Wright petitioned the county for a special use permit to allow use of the property as a Restricted Landing Area (hereinafter RLA). A public hearing was held before the zoning board on June 22, 1976, at which a representative of the city-county planning commission testified in favor of the petition. The zoning board, however, recommended denial of the petition, and the county board did subsequently deny the petition. Ronald Wright then filed suit for injunctive relief and declaratory judgment, claiming denial of the special use permit to be a violation of the due process clause of the constitutions of the United States and Illinois. Patricia Wright was added as a party plaintiff without objection. The circuit court denied plaintiffs' request for relief, finding the denial to be reasonable. A post-trial motion, contending that the basis for denying the special use permit had been preempted by the Illinois Aeronautics Act (Ill. Rev. Stat. 1975, ch. 15½, par. 22.1 *et seq.*) and the Federal Aviation Act of 1958 (49 U.S.C. §§1301 *et seq.* (1976)), was denied on March 31, 1977. Plaintiffs appeal.

Plaintiffs' property is about 20 acres in size and roughly rectangular, approximately 333 feet from east to west by 2600 feet from north to south. It is improved with a house, garage and a storage building. It is surrounded by agricultural land with a few scattered homes. Rockton Road runs east and west along the northern boundary of the property. The proposed runway would run from south to north with takeoffs probably being to the north.

Plaintiff Ronald Wright testified that he worked as an airline mechanic in Belvidere. He is a licensed pilot and owns one airplane, which he would like to use to fly to and from work in appropriate weather. He estimated an average of one or two takeoffs and landings per day from the field on three or four days a week during the summer months. He admitted that failure to receive the special use permit for the RLA would not reduce the market value of his property.

Mr. Burrille Coppernoll, a flight safety coordinator with the Illinois Department of Transportation, Division of Aeronautics, testified about

the general procedures of that division and as to his inspections of plaintiffs' property. Mr. Coppernoll indicated that upon receipt of an application the Division conducted an initial inspection to see if the proposed property could meet the State safety requirements for an RLA. If a safe RLA were possible, the Division would notify the neighbors and local government that an RLA was under consideration. If, and only if, the property already had or then receives appropriate zoning from local authorities and already has met or is altered to meet the safety requirements, the Division would issue a certificate for the RLA. Regular inspections are carried out by the Division's representatives to insure maintenance of property safety standards. A certificate can be revoked if the property becomes unsafe for any reason. The Division does not consider the nature of the surrounding area except as it would affect the safety of the landing strip itself.

Mr. Coppernoll made two "initial" inspections of plaintiffs' property and indicated that, with removal of certain obstacles at its northern end and with proper grading, seeding and moating of the runway, the property would be suitable for an RLA. A field engineer for Commonwealth Edison testified with regard to the possibility of burying the power lines on plaintiffs' property.

David Atkins, the principal planner of the County Planning Commission, testified that his office had recommended approval of the RLA because it was not inconsistent with the general plan for the area.

Warren Johnson, a real estate broker, testified that he had sold 10 homes in a subdivision near the nearby Honnejah RLA both before and after that RLA began operations and that the existence of the RLA had had no effect on prices of the homes there. He also stated that a house 400 feet from a landing field that had fewer than 10 landings and takeoffs per day would not be reduced in value by the existence of that field. Paul Fridley, a developer, also had sold homes near RLAs and testified that the landing areas had not reduced values of the homes sold. Noriss Leviss, a real estate broker and licensed appraiser, testified that the existence of four other RLAs in the area had not "affected the development of the residential areas adjacent thereto" and that an RLA on plaintiffs' property would have no effect on the value of the property around it.

Arnold Moen, a county zoning official and building officer, testified for the defendant that plaintiffs' property was in a township that was developing into a residential area in a "fairly rapid" manner.

Three of plaintiffs' neighbors testified that they believed that the proposed RLA would reduce the value of their property. Mr. C. Hulbert testified that he lived near another RLA in Winnebago County, and that he and his wife had been significantly disturbed by noise from that RLA.

Thomas Eddie, a land surveyor, testified as to the dimensions, grade and other characteristics of the Wrights' property in connection with whether the proposed RLA would be technically safe as a landing field. Albert Ruhmann, a county zoning official and commercial airline pilot, explained in detail the Illinois Division of Aeronautics glide slope regulations and their potential application to plaintiffs' property. Messrs. Eddie and Ruhmann both indicated that, in their opinions, the proposed RLA would not be in compliance with the technical safety standards set by the Illinois Division of Aeronautics. Their testimony, however, was based on the property as it was when they examined it, not on any of the potential alterations suggested by Mr. Coppernoll of the State Aeronautics Division.

■■ ■ Plaintiffs claim that the denial of the special use permit was an unconstitutional deprivation of property in violation of the due process clauses of the Federal and Illinois constitutions. The Illinois Supreme Court set forth the test for determining the constitutional validity of a zoning ordinance in *Tomasek v. City of Des Plaines* (1976), 64 Ill. 2d 172, 179-80, 354 N.E.2d 899, 903, as follows:

> "An ordinance will be presumed to be valid, and the one attacking an ordinance bears the burden of demonstrating its invalidity. The challenging party must establish by clear and convincing evidence that the ordinance, as applied, is arbitrary and unreasonable and bears no substantial relation to the public health, safety or welfare."

The factors which a trial court should properly consider in weighing the validity of a zoning ordinance are: (1) the existing uses and zoning of nearby property; (2) the extent to which surrounding property would be depreciated by the proposed use; (3) the suitability of the subject property for the zoned purposes; (4) the extent to which the reduction in the value of the property promotes the health, safety, morals or general welfare of the public; and (5) the relative gain to the public as compared to the hardship imposed on the property owner. *American National Bank & Trust Co. v. City of Rockford* (1977), 55 Ill. App. 3d 806, 371 N.E.2d 337.

In applying these factors to the instant case, the trial court found the denial of the special use permit to be reasonable, stating:

> "I have considered all the evidence produced and believe plaintiff's exhibit 26, delineating the present landing strips in defendant county, best demonstrates defendant's basis for denial of the permit in this instance. Almost all of the existing landing areas are to the north and northeast of Rockford in territory now basically zoned agricultural, but rapidly changing to residential.

*The defendant has drawn its line for this use and has done so reasonably.* It must balance the interest of the few who wish to make this use of their property against the interest of the many who would be required *to see, hear and possibly fear* such use over and near their property, on property they may otherwise consider purchasing and building homes upon.

❋   ❋   ❋

*The defendant has determined the saturation point for this use in this area* and its judgment may not be overturned on the evidence presented in this case." (Emphasis added.)

Plaintiffs contend the trial court's finding that "defendant has drawn its line" and "determined the saturation point" to be against the manifest weight of the evidence. Plaintiffs agree that the county has the right to limit the number of RLAs but, rather, allege that no such limiting "line" was in fact drawn. This allegation is supported by the record; defendant has not shown that the denial of plaintiffs' special use permit was due to the number of RLAs already operating. Neither the administrative denial of the permit nor defendant's answer mentioned any such "line" basis for denying the special use permit. The exhibit expressly relied on by the trial court was introduced by plaintiffs and not defendant.

More significantly, three county officials testified at the trial and none alleged that the county had drawn any "line" or indicated that any "saturation point" had been determined. None stated that the county would not continue to allow new RLAs in plaintiffs' part of the county. David Atkins, the principal planner of the county, testified that he had recommended the granting of plaintiffs' petition for an RLA. Arnold Moen did testify that the area in question was undergoing a rapid transition from agricultural to residential, but said nothing about that development being the basis of the denial of the petition. Albert Ruhmann also mentioned nothing about any "line" or "saturation point" but did admit that the county had approved other applications involving RLAs subsequent to plaintiffs' application. Although defendant correctly points out that these other applications can be distinguished from plaintiffs', this distinction goes only to plaintiffs' allegation that the subsequent approvals were inconsistent with some hypothetical "line," it does not indicate that such a "line" actually existed.

We conclude, therefore, that the finding that the county had drawn a "line" to limit proliferation of RLAs was erroneous. Such a "line" was not used as a basis for denying the special use permit herein and, hence, cannot be used to justify that denial.

Plaintiffs did not raise the issues of a local government's power to regulate aircraft noise and safety until their post-trial motion. Thus, we must first deal with whether these issues are properly before us.

Defendant cites the rule that objections to evidentiary matters must be made when the evidence is introduced at trial, and argues that by failing to object to the evidence pertaining to noise and safety plaintiffs have waived any argument on its relevance. Plaintiffs' arguments, however, go to a developing area of the law and are not appropriately characterized solely as evidence questions.

It is true that an appellate court should not consider different theories or new questions if proof might have been offered to refute or overcome them had they been presented at trial. (*Hux v. Raben* (1967), 38 Ill. 2d 223, 225, 230 N.E.2d 831, 832.) In the instant case, however, plaintiffs did not wait until the appeal but raised the issues on a post-trial motion before the trial court. The trial court was given an opportunity to rule on the question. Defendant was given an opportunity to argue the questions to the trial court while arguing the merits of the post-trial motion, and in fact did so. We fail to see how defendant has been prejudiced by plaintiffs' failure to raise the issues at an earlier state. Therefore, the questions raised by the plaintiffs in the post-trial motion are properly before this court.

Plaintiffs argue that the question of aircraft noise has been preempted by Federal regulation and that, therefore, local governments cannot attempt to regulate this noise by the use of zoning ordinances. Recent case law at least appears to support this contention. In *Village of Bensenville v. City of Chicago* (1973), 16 Ill. App. 3d 733, 306 N.E.2d 562, the First District Appellate Court held municipalities surrounding O'Hare Field powerless to declare a proposed extension of O'Hare a public nuisance based on expected air and noise pollution. The court held that:

> "* * * the United States * * * has, through the Federal Aviation Act, as now supplemented by the Noise Control Act of 1972 and the regulations issued thereunder, so occupied the regulation of aircraft noise and air pollution as to pre-empt any state or local action in that field." (16 Ill. App. 3d 733, 738, 306 N.E.2d 562, 566.)

In reaching the above conclusion, the court relied heavily on *City of Burbank v. Lockheed Air Terminal, Inc.* (1973), 411 U.S. 624, 36 L. Ed. 2d 547, 93 S. Ct. 1854. In that case Burbank passed an ordinance limiting jet takeoff to daytime hours to lessen the noise problem at night. The United States Supreme Court held the ordinance to be unconstitutional on the ground that Federal regulation of airport noise was so pervasive so as to preempt State and local control of that area. The court relied on the need for uniformity in the area and noted that similar regulation by numerous local municipalities would seriously interfere with the FAA's control of air traffic flow.

Defendant urges us to limit the language in *Burbank* and *Bensenville* to the facts of those cases. It contends that the instant case should be

distinguished from both because it involves a privately owned, personally used airstrip that is not yet operating. No commercial use would be allowed. It is unlikely that the FAA would ever regulate the air traffic flow in and out of plaintiffs' property. No need for uniformity is evident. Furthermore, Winnebago County is not attempting to regulate an already existing airfield but is determining whether to allow the use at all. Defendant contends that this decision is particularly local in that it involves consideration of the appropriate use of land rather than regulation of already existing uses. Once an airport is operating, defendant argues, it may be that only the FAA can regulate the resulting noise problem, the right not to choose not to have an airport in the first place should be local, especially where the airport is one where service to the public is not a consideration.

■■ ■ We find defendant's arguments convincing. There is no express provision of preemption in the Federal Aviation Act of 1958 as amended by the Noise Control Act of 1972 (42 U.S.C. 4901 *et seq.*). The test for whether Federal preemption exists in the absence of such an express provision was set forth in *Rice v. Santa Fe Elevator Corp.* (1946), 331 U.S. 218, 230, 91 L. Ed. 1447, 67 S. Ct. 1146, as follows:

> "So we start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress. * * * Such a purpose may be evidenced in several ways. The scheme of federal regulation may be so pervasive as to make it reasonable the inference that Congress left no room for the States to supplement it. * * * Likewise, the object sought to be obtained by the federal law and the character and obligations imposed by it may reveal the same purpose. * * * Or the state policy may produce a result inconsistent with the objective of the federal statute."

In the absence of any evidence of pervasive Federal regulation of the placement of RLAs, or that the denial of this special use permit would interfere with Federal policies, we conclude that the Federal Aviation Act does not preempt local power to decide whether to allow new private RLAs on the basis of potential noise problems.

■■ Having determined that a county could theoretically zone on the basis of aircraft noise, we turn to whether it has done so properly in this case. We find that it has not. No standards for noise are set out in the ordinance itself; there has been no objective determination as to exactly how much noise plaintiffs' aircraft makes or of direct physical deleterious effect upon their neighbors; there has been no evidence that plaintiffs' proposed airfield would be particularly badly placed because of a noise hazard, *i.e.*, near a hospital. All there has been are complaints from three neighbors to the effect that they personally find the noise from aircraft

highly undesirable. While we can sympathize with their feelings, this simply is not enough reason to deny plaintiffs the right to use their land as they please when there has been expert testimony indicating that the RLA would not negatively affect the neighbors' property values.

The question of safety and the relation of local zoning to the powers of the Division of Aeronautics is confusing because there are two different types of airfield safety: the technical safety of the field itself, *i.e.*, runway length, and the broader public safety questions potentially present in even the most technically safe airfield.

In *County of Du Page v. Harris* (1967), 89 Ill. App. 2d 101, 231 N.E.2d 195, we indicated that the Aeronautics Act did not repeal any local zoning powers, commenting that:

> "* * * the Aeronautics Act is designed to promote the public interest and aeronautical progress primarily by promoting safety in aeronautics. The County Zoning Act is designed to promote the general welfare and to conserve the values of property throughout the county by regulating and restricting the location and use of buildings, structures and land. Neither is so repugnant to the other that the two Acts may not exist *or be applicable* concurrently." (89 Ill. App. 2d 101, 109, 231 N.E.2d 195, 199.) (Emphasis added.)

Thus, broader public safety questions are properly the concern of local zoning authorities. Indeed, since the Division does not concern itself with nontechnical aspects of airports and the public welfare, it is the county's duty to make an independent evaluation of these factors. However, after reviewing the evidence, we must conclude that the decision of the trial court was based upon technical safety aspects of the proposed RLA. Messrs. Eddie and Ruhmann both were called by defendant to testify with regard to alleged technical safety problems of the Wrights' property. No comparable evidence was introduced by defendant on nontechnical aspects of safety except for the observation that one neighbor's house was near the end of the proposed runway. Rather, the county has attempted to substitute its judgment for that of the State Division of Aeronautics on the question of whether plaintiffs' RLA has met the *Division's* technical standards. This the county cannot be permitted to do. The Division has established clear technical safety standards and a comprehensive inspection scheme to enforce them and has more expertise in the enforcement of its own standards than the county. Moreover, in this particular case the county's witnesses attacked the safety of the property for use as a RLA "as is" and did not consider its suitability if the changes suggested by Mr. Coppernoll and required for certification were made.

██ The nontechnical safety aspects of this case are comparable to those in *American National Bank & Trust Co. v. City of Rockford* (1977), 55 Ill. App. 3d 806, 371 N.E.2d 337, which involved the denial by Rockford of

the special use permit for an RLA. At trial a Rockford alderman testified against the proposed special use alleging potential safety problems and a detrimental effect on the people in the surrounding area. We concluded that these

"* * *objections to the safety of this proposed restricted landing area are not reasonable and justifiable based on this record, in light of the preliminary safety determination made by the Aeronautics Division of the Illinois Department of Transportation, and the further safety studies that will be conducted by that department prior to the issuance of a certificate for a restricted landing area." (55 Ill. App. 3d 806, 810, 371 N.E.2d 337, 341.)

In other words, to justifiably deny the use of an RLA on the basis of safety despite provisional approval by the Division, a local zoning authority must bring forward some objective evidence of a particular safety problem or hazard peculiar to this RLA rather than speculative fears of local residents which might exist for any restricted landing area.

■■ For the foregoing reasons we find that Winnebago County has failed to demonstrate that the denial of plaintiffs' petition bears any substantial relation to the public health, safety or welfare. Therefore, we must reverse.

Reversed.

SEIDENFELD, P. J., concurs.

Mr. JUSTICE RECHENMACHER, dissenting:

I respectfully dissent. The plaintiffs here are challenging a zoning regulation which has been upheld by the trial court. In my opinion, the plaintiffs have failed to show by clear and convincing evidence that the denial bore no substantial relation to health, safety and/or welfare. The trial court felt that the planning for future residential development was a reasonable basis for drawing the line on zoning for additional Restricted Landing Areas.

In this the trial court was apparently influenced by the plaintiffs' exhibit showing that the majority of the 22 already-existing RLAs in Winnebago County were located to the north and northeast of Rockford, as was the petitioner's land. Apparently the decision of the county authorities to turn down the petition for a new RLA in the same area was reasonably taken by the trial court as an indication that the county authorities had drawn the line as to expansion of RLAs in that area which is developing rapidly as a residential area.

This appears to be a rational conclusion and to be reasonably related to the health, safety, comfort and convenience of the public.

The trial court's decision, in my opinion, should be affirmed.