OPINION OF THE COURT
Joseph P. Kuszynski, J.
Petitioner Gary Leasing, Inc., requests an order declaring certain resolutions of the respondent Town Board of the Town of Pendleton (Town Board) to be null and void and to prohibit their enforcement. On July 30, 1984, the Town Board adopted two resolutions which it retroactively applied to the petitioner’s airport permit. The resolutions provided for a curfew on flights at the airport between the hours of 10:00 p.m. and 7:00 a.m. and also placed a maximum number of 30 planes that could be based at the airport.
By way of background, the Lockport Aviation Center was purchased by the petitioner in May 1983. The airport had *195 previously been in existence since some time in the 1940’s. In September of 1983 the Town Board granted the petitioner a three-year permit containing no restrictions or conditions and the petitioner thereupon began operations. The petitioner has made repairs and improvements, building new hangers and offices with town approval through the building inspector, who issued building permits. Currently 30 aircraft are based at the airport with additional space available for 74 more aircraft. Petitioner is currently in the process of leasing these new facilities with the purpose of making the facility economically successful.
The resolutions of the Town Board were passed as a result of applications it had received from residents who live in the area of the airport who complained about noise especially at night, and expressed concerns about the possibility of crashes.
In its memorandum of law, as authority for its action, the respondent Town Board cites General Business Law § 249 and the case of Port of N. Y. Auth. v Eastern Air Lines (259 F Supp 745 [1966]). In the memorandum the respondent concedes that it cannot impose a curfew on the airport operations agreeing that the Federal Aviation Administration has exclusive jurisdiction in this area. Therefore, the only question remaining before this court concerns the Town Board’s authority to restrict the number of aircraft based at the airport.
As an additional argument the respondent Town Board claims that the petitioner must comply with the State Environmental Quality Review Act (SEQRA) (ECL 8-0101 et seq.) before basing additional aircraft at the airport or constructing any improvements. Attention is directed to the fact that this contention is not considered to be an issue in this present controversy as SEQRA deals only with the actions of State or local government. (ECL 8-0105, 8-0107, 8-0109.) The Town of Pendleton could have initially required the preparation of environmental impact statements or reports as part of any permit or license application procedure (ECL 8-0109 [3]) when it granted the petitioner its permit, but apparently did not do so. Additionally, the Town Board resolutions are the focus of the present controversy and not the past physical improvements of the petitioner’s airport which were duly licensed by the respondent.
Similarly, General Business Law § 249 does not apply to the present controversy. This section requires the approval of the Town of Pendleton (or any local governmental entity) for the creation of or improvement of an airport within its boundaries. The Town of Pendleton has previously approved the existence *196 (creation) of the subject airport within its borders. The Town Board’s resolution fixing a maximum number of 30 airplanes at the airport does not involve an airport improvement as defined by the General Business Law. (See also, Town of Poestenkill v Sicho, 54 Misc 2d 191.)
General Business Law § 249 (2) (b) defines an airport improvement as “the extension, alteration, addition to or realignment of the runways of an existing privately-owned airport or the modification in any way of the landing and take-off directions at such a privately-owned airport.” This section of the General Business Law cannot therefore be used as authority for the town’s resolution under attack.
Finally, the Town Board argues that the State retains the powers to reasonably protect the public safety and that local regulation is not proscribed unless national uniformity is essential. This need for national uniformity however has preempted the area of regulation of air navigation to the Federal Government. The purpose of the petitioner Town Board’s “30 plane capacity” resolution is to protect the safety of local residents as evidenced by the minutes of the July 3rd and 30th meetings where the residents expressed fears of airplane crashes. This resolution attempts to control air navigation indirectly by limiting the number of planes based at the airport. All control in this area falls under the exclusive authority of the Federal Aviation Administration (City of Burbank v Lockheed Air Term., 411 US 624.)
The respondent further cites Port of N. Y. Auth. v Eastern Air Lines (259 F Supp 745, supra) as authority for a municipality to control ground operations and use of airport runways. However, in Port of N. Y. Auth. v Eastern Air Lines (supra), the airport was operated by a quasi-governmental agency, the “Port of New York Authority” which was created by agreement between the States of New York and New Jersey. The regulation in question concerned the restriction of the use of a particular runway at the airport. The regulation was issued by the operator of the airport, the Port of New York Authority. Eastern Air Lines and the other airlines were users of the airport facilities. These airlines believed the subject regulation to be unreasonable. The court enjoined the airlines’ use of the runway, upholding the Port Authority’s regulation. The facts are therefore distinguishable from the present controversy.
The petitioner’s request declaring the subject resolution null and void is granted.