572 A.2d 528

**Robert E. HARRISON et al.**

v.

**Bernard A. SCHWARTZ et al.**

No. 89, Sept. Term, 1989.

Court of Appeals of Maryland.

April 19, 1990.

David K. Bowersox (William B. Dulany, Dulany, Parker & Scott, on brief), Westminster, for petitioners.

John T. Willis (Weinberg and Green, on brief), Baltimore, Charles W. Thompson, Jr., County Atty., Westminster, for respondents.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, McAULIFFE and ADKINS, JJ.,

and HOWARD S. CHASANOW *, Judge, Specially Assigned.

ADKINS, Judge.

When the Carroll County Board of Zoning Appeals granted a conditional use for a privately owned airport in 1982, it attached to that grant several conditions. One of them limited the frequency of take-offs of glider-towing aircraft; another established a curfew for the operation of those aircraft. Both conditions were designed to reduce the effect of aircraft engine noise on residential properties near the airport. Both are invalid. They trespass upon a field that has been impliedly preempted by federal law. *City of Burbank v. Lockheed Air Terminal, Inc.*, 411 U.S. 624, 93 S.Ct. 1854, 36 L.Ed.2d 547 (1973). A sketch of the pertinent facts before us places the preemption issue in context.

## I.

In 1972 petitioner Robert E. Harrison (Harrison) obtained from the Board of Zoning Appeals for Carroll County (the Board) a conditional use permit to operate a "private airport site and drop zone for parachutists" on a portion of his farm located near Woodbine in Carroll County. The parachutists, who used a single aircraft, were members of a small skydiving club which engaged in that activity mostly on weekends during the warmer months. The conditional use was subject to a condition requiring the establishment of parking facilities and to continued approval by the State Aviation Commission.

As time passed the parachuting activity diminished. By the early 1980's, petitioner Jerry Gaudet was leasing the Woodbine airport and running petitioner Bay Soaring, a glider organization, which used the airport for glider operations. (We shall refer to petitioners collectively as "Bay

---

* Howard S. Chasanow, a judge of the Seventh Judicial Circuit, was specially assigned to the Court of Appeals at the time the case was argued. He was sworn in as a judge of the Court on 17 January 1990.

Soaring."). The airport stayed open every day. The gliders ordinarily were towed aloft by aircraft; sometimes as many as 90 flights a day were generated. Bay Soaring solicited the public to take lessons and rides at Woodbine. The facility had obtained from the State Aviation Administration an airport operating certificate designating the "Woodbine Glider Port" to operate as a "Licensed Private/Commercial Airport."

Harrison's neighbors (respondents Bernard A. Schwartz and others, hereinafter collectively "the Neighbors") were not pleased. Their protests resulted in a 1982 hearing before the Board, after which the Board concluded that the use of the airport had expanded beyond the limits of the 1972 conditional use. Under protest, Bay Soaring applied for a new conditional use permit.[1]

Hearings were held on that application. The Neighbors opposed it, expressing concern about aircraft engine noise, among other things. The Board granted a new permit, but attached to it eight conditions. Two of them are the basis of the controversy in this case. They are:

2. Aircraft take-offs shall be separated by intervals of at least 15 minutes in order to minimize the adverse effects of aircraft engine noise upon the residents of the surrounding area and to reduce the intensification of the use of the property in what is otherwise a primarily rural residential area.

3. Aircraft take-offs shall not be made before 9:00 a.m. or later than 7:00 p.m. on any day.

A third condition imposed by the Board was:

7. [Bay Soaring] will design take-off and landing patterns in such a way that they will minimize the adverse effect upon the neighboring residents. In addition [Bay Soaring] shall require people taking-off and landing from

---

1. Bay Soaring also appealed from the Board's 1982 decision. That appeal was eventually disposed of adversely to Bay Soaring. It is not before us. *See County Comm'rs of Carroll County v. Gaudet,* No. 1270, Sept. Term, 1986 (filed 23 June 1987) (unreported).

the airfield to be familiar with the landing and take-off patterns and to use them.[2]

When Bay Soaring appealed, the Circuit Court for Carroll County found that "[i]n imposing the ... Conditions, airport noise appears to have been the Board's paramount concern...." It held that these three conditions were invalid because of federal preemption. It remanded to the Board for further proceedings. The Neighbors and Carroll County (the County) appealed to the Court of Special Appeals, which held that condition 7, dealing with the conduct of flight in navigable airspace, was preempted. But it thought conditions 2 and 3 were not preempted. At the behest of Bay Soaring, we issued a writ of certiorari. 317 Md. 440, 564 A.2d 784 (1989).

## II.

The United States Constitution "and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States [are] the supreme Law of the Land." U.S. Const. art. VI, cl. 2. *See also* Md.Decl. of Rights, Art. 2. Because of this supremacy, valid federal legislation and regulations may preempt state or local laws or regulatory actions. When valid federal law actually conflicts with state law, the former preempts the latter. *Silkwood v. Kerr–McGee Corp.*, 464 U.S. 238, 248, 104 S.Ct. 615, 621, 78 L.Ed.2d 443, 452 (1984). And "[i]f Congress evidences an intent to occupy a given field, any state law falling within that field is pre-empted." *Id.* We have recognized that "[i]f the federal law expressly states a preemptive intent, that intent will govern." *Becker v. Litty*, 318 Md. 76, 86, 566 A.2d 1101, 1106 (1989) (citing *Hillsborough County v. Automated Medical Labs.*, 471 U.S. 707, 713, 105 S.Ct. 2371, 2375, 85 L.Ed.2d 714, 721 (1985)). Moreover, even absent express preemption, when

---

2. Condition 7 is not at issue in this appeal.

"a federal statute made 'in Pursuance' of the Constitution is so comprehensive that [it occupies the field leaving] no room for state action," preemption also occurs. *Becker,* 318 Md. at 86, 566 A.2d at 1106. We deal here with implied preemption of the "occupy-the-field" variety.

The Commerce Clause of the United States Constitution (art. I, § 8, cl. 3) gives Congress the power to control air traffic. *City of Burbank,* 411 U.S. at 625, 93 S.Ct. at 1855–1856, 36 L.Ed.2d at 549. Pursuant to that power, Congress has enacted the Federal Aviation Act of 1958, 72 Stat. 731, and amended it by the Noise Control Act of 1972, 86 Stat. 1234. *See* 49 U.S.C.App. §§ 1301 *et seq.* The Noise Control Act provides that

> In order to afford present and future relief and protection to the public health and welfare from aircraft noise and sonic boom, the FAA, after consultation with the Secretary of Transportation and with EPA, shall prescribe and amend standards for the measurement of aircraft noise and sonic boom and shall prescribe and amend such regulations as the FAA may find necessary to provide for the control and abatement of aircraft noise and sonic boom, including the application of such standards and regulations in the issuance, amendment, modification, suspension, or revocation of any certificate authorized by this subchapter. No exemption with respect to any standard or regulation under this section may be granted under any provision of this chapter unless the FAA shall have consulted with EPA before such exemption is granted, except that if the FAA determines that safety in air commerce or air transportation requires that such an exemption be granted before EPA can be consulted, the FAA shall consult with EPA as soon as practicable after the exemption is granted.

49 U.S.C.App. § 1431(b)(1). Under the same section, the EPA is required to

> submit to the FAA proposed regulations to provide such control and abatement of aircraft noise and sonic boom (including control and abatement through the exercise of

any of the FAA's regulatory authority over air commerce or transportation or over aircraft or airport operations) as EPA determines is necessary to protect the public health and welfare.

49 U.S.C.App. § 1431(c)(1). In addition, numerous regulations bear on the topic of control of aircraft noise. *See, e.g.,* 14 C.F.R. Parts 36.1–36.7, 36.9, 36.101, 36.103, 36.201, 36.-301, 36.501 (1989). The validity of the statutes and regulations is not questioned. Their implied preemptive effect is questioned. But that issue has in large part been resolved by the Supreme Court of the United States.

That Court's decision in *City of Burbank, supra,* is the "preeminent authority on the question of federal preemption in the area of aviation." *Blue Sky Entertainment, Inc. v. Town of Gardiner,* 711 F.Supp. 678, 691 (N.D.N.Y. 1989). Furthermore, *City of Burbank* speaks directly to the problem of local efforts to control aircraft engine noise. It is upon that problem that the cited cases focus; we need not decide what the full preemptive reach of federal aviation law may be. *See Ward v. State,* 280 Md. 485, 495–496, 374 A.2d 1118, 1123–1124 (1977), *cert. denied,* 434 U.S. 1011, 98 S.Ct. 723, 54 L.Ed.2d 754 (1978) ("Congress has not occupied the entire field of aeronautics by the Federal Aviation Act of 1958").

In *City of Burbank,* the city enacted an ordinance that made it unlawful for the operator of the privately owned Hollywood–Burbank Airport to allow any pure jet aircraft to take off between 11:00 p.m. of one day and 7:00 a.m. of the next. This curfew was markedly similar to condition 3 as imposed by the Board in the case before us. The Supreme Court concluded that federal preemption—implied from federal occupation of the field of aircraft noise regulation—rendered the ordinance unconstitutional. 411 U.S. at 633, 93 S.Ct. at 1859–1860, 36 L.Ed.2d at 554.

The Supreme Court recognized that " 'we start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress....' "

*City of Burbank,* 411 U.S. at 633, 93 S.Ct. at 1859, 36 L.Ed.2d at 553 (quoting *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447, 1459 (1947)). It recognized that the federal legislation before it in *City of Burbank* contained "no express provision of pre-emption...." 411 U.S. at 633, 93 S.Ct. at 1859, 36 L.Ed.2d at 553. But it pointed out that a " 'scheme of federal regulation may be so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it.... ' " *Id.* (again quoting *Rice* ).

The Court examined at length the provisions of the Federal Aviation Act and the Noise Control Act. It scrutinized the legislative history, which included a Senate Report and a letter from the Secretary of Transportation. The Senate Report explained, " 'States and local governments are preempted from establishing or enforcing noise emission standards for aircraft unless such standards are identical to standards prescribed under [the Noise Control Act of 1972].' " The letter from the Secretary of Transportation to Senator Monroney declared that " 'State and local governments will remain unable to use their police powers to control aircraft noise by regulating the flight of aircraft.' " 411 U.S. at 634–635, 93 S.Ct. at 1860, 36 L.Ed.2d at 554–555 (quoting S.Rep. No. 92–1160, pp. 10–11, 1972 U.S.Code Cong. & Admin. News 4655, 4663 and 1968 U.S.Code Cong. & Admin. News 2688, 2693–2694). It gave weight to the remarks of the Chairman of the House Committee on Interstate and Foreign Commerce to the effect that "we do not want" cities and states "to pass noise regulations." 411 U.S. at 636–637, 93 S.Ct. at 1861, 36 L.Ed.2d at 555 (quoting 118 Cong.Rec. 37083 (1972)). It noted Senator Tunney's view that under the 1972 Act there would be " 'proposed means of reducing noise in airport environments through the application of emission controls on aircraft, the regulation of flight patterns and aircraft and airport operations, and *modifications in the number, frequency, or scheduling of flights* [as well as] ... *the imposition of curfews on noisy airports....* ' " 411 U.S. at 637, 93 S.Ct. at 1861, 36

L.Ed.2d at 555–556 (quoting 118 Cong.Rec. 37317 (1972)) [emphasis added in Supreme Court opinion].

The Court concluded that "[i]t is the pervasive nature of the scheme of federal regulation of aircraft noise that leads us to conclude that there is pre-emption." 411 U.S. at 633, 93 S.Ct. at 1859–1860, 36 L.Ed.2d at 554. The Circuit Court for Carroll County found *City of Burbank* dispositive; the Court of Special Appeals attempted to distinguish the case. There are distinctions, but they make no constitutional difference.

The intermediate appellate court pointed out that Bay Soaring uses the Woodbine Airport for recreational flights while the Hollywood–Burbank Airport is commercial. Actually, the record shows that Bay Soaring is engaged in a commercial operation, but the Court of Special Appeals correctly observed that "[t]he airplanes involved in Bay Soaring's enterprise are not used for the transport of goods or persons in the stream of commerce" and that "FAA control over glider port operations is minimal." [3] *Schwartz v. Harrison*, No. 1425, Sept. Term, 1988 (filed 4 May 1989) (unreported) [slip op. at 4]. It thought that Board condition 2 was not preempted because glider take-offs were not subject to FAA control. *Id.*, slip op. at 3–4. *But see* n. 3, *supra*. It thought that condition 3 was not preempted because "[t]he *City of Burbank* Court was concerned with the congestion and the loss of efficiency that might be caused by the imposition of a curfew at a commercial airport"—a concern not present in the case of the Woodbine facility. *Id.*, slip op. at 5.

Obviously, the small Woodbine airport is very different from Hollywood–Burbank. Both, however, are privately owned. The *City of Burbank* holding applies to privately owned airports as well as publicly owned ones. The Su-

---

3. FAA regulations nevertheless provide some control, including a requirement that under some circumstances the tow plane pilot notify "the FAA flight service station ... before conducting any towing operations...." 14 C.F.R. § 91.17(a)(4) (1989).

preme Court did not make an exception for small airports that do not involve inter-airport commercial cargo or passenger flights, or for activities not expressly governed by federal statute or regulation.[4] If we were dealing with the sort of preemption that arises from conflict between federal and state enactments, these considerations might be pertinent. But we are dealing with preemption by occupation of the field. Once the field is occupied by the federal government, neither state nor local government may enter it. And occupation of the field does not mean that every blade of grass within it must be subject to express federal control; it means only that Congressional intent demonstrates that the area is subject to exclusive federal control, whether potential or actual.

Among the concerns of the Supreme Court in *City of Burbank* was the efficient and safe use of airspace and "the flexibility of [the] FAA in controlling air traffic flow." 411 U.S. at 639, 93 S.Ct. at 1862, 36 L.Ed.2d at 557 [footnote omitted]. Any nonproprietary and nonfederal attempt to control noise was preempted if it might affect that air traffic flow. Hence, "the pervasive control vested in EPA and in [the] FAA under the 1972 Act seems ... to leave no room for local curfews or other local [noise] controls." 411 U.S. at 638, 93 S.Ct. at 1862, 36 L.Ed.2d at 556.

The scope of that ruling is emphasized by Justice (now Chief Justice) Rehnquist's dissent in *City of Burbank*, 411 U.S. 640, 93 S.Ct. 1863, 36 L.Ed.2d 558. Writing for himself and three of his colleagues, Justice Rehnquist read legislative history quite differently from the way the majority interpreted it. He argued that noise regulation was a matter of particularly local concern, 411 U.S. at 643, 93 S.Ct. at 1864, 36 L.Ed.2d at 559, and that the legislative

---

4. *City of Burbank* does hold open the possibility that an airport proprietor (including a municipality) may issue valid regulations controlling airport noise. 411 U.S. at 635–636 n. 14, 93 S.Ct. at 1861 n. 14, 36 L.Ed.2d at 555 n. 14. We shall have occasion to refer to this exception later. For now, it is enough to note that Carroll County is not the proprietor of Woodbine Airport.

history showed an intent not to diminish the power to abate noise through local zoning or other regulations. 411 U.S. at 650, 93 S.Ct. at 1868, 36 L.Ed.2d at 563. He believed that federal preemption extended only to the regulation of technological methods of reducing the output of noise by aircraft. 411 U.S. at 651, 93 S.Ct. at 1868, 36 L.Ed.2d at 563–564. These views, however, were rejected by the majority, which clearly had a vastly more expansive view of the extent of the preemption. It is the majority view that binds us.

The reach of *City of Burbank's* preemption holding is also confirmed by what appears to be almost uniform interpretation by other courts. Indeed, we have been unable to discover a case (other than the opinion of the Court of Special Appeals) that squarely supports the position of the Neighbors and the County.

The Neighbors, for example, cite *Santa Monica Airport Ass'n v. City of Santa Monica,* 659 F.2d 100 (9th Cir.1981). In that case, a curfew and other noise control regulations were upheld. But the City of Santa Monica, as the court pointed out, was the proprietor of the airport in question, and thus within the proprietor exception to the general rule of *City of Burbank.* 659 F.2d at 103–104.

The proprietor exception, as various courts have recognized, is based on the fact that an airport proprietor may be liable for excessive noise emanating from aircraft that use the airport. *See, e.g., Griggs v. Allegheny County,* 369 U.S. 84, 82 S.Ct. 531, 7 L.Ed.2d 585 (1962); *United States v. Causby,* 328 U.S. 256, 66 S.Ct. 1062, 90 L.Ed. 1206 (1946). To guard against liability, the airport proprietor should be able to promulgate reasonable noise regulations. It was that window of nonpreemption that the Supreme Court left open in *City of Burbank, see* n. 4, *supra,* and a number of courts have relied on it to hold that proprietary regulations of aircraft noise are not preempted. For additional cases explaining the proprietor's exception, see, for example, *City of Blue Ash v. McLucas,* 596 F.2d 709, 712 (6th Cir.1979); *United States v. New York,* 552 F.Supp. 255 (N.D.N.Y.

1982), *cert. denied,* 466 U.S. 936, 104 S.Ct. 1907, 80 L.Ed.2d 456, (1984); *National Aviation v. City of Hayward,* 418 F.Supp. 417 (N.D.Cal.1976); *Air Transport Ass'n of America v. Crotti,* 389 F.Supp. 58 (N.D.Cal.1975). As we already have pointed out, Carroll County is not the proprietor of Woodbine Airport; the proprietor exception is not available to it.

Carroll County asserts that *Wright v. County of Winnebago,* 73 Ill.App.3d 337, 29 Ill.Dec. 347, 391 N.E.2d 772 (1979), demonstrates the validity of the Board's conditions. It does not. In *Wright* local authorities, acting under a zoning ordinance, denied the Wrights permission to establish a restricted aircraft landing area from which Mr. Wright proposed to commute to work by plane. There is some attempt in *Wright* to distinguish *City of Burbank* on grounds similar to those put forward by the Court of Special Appeals here. 73 Ill.App.3d at 343–344, 29 Ill.Dec. 347, 391 N.E.2d at 777–778. But the essential rationale in *Wright* is that local government may exercise zoning authority to prohibit a restricted landing area altogether. *Id.* at 344, 29 Ill.Dec. 347, 391 N.E.2d at 777–778. To deny permission to create an airport-like facility does not invade the noise-control field that is federally occupied, for that sort of zoning denial cannot affect the way in which aircraft operate in navigable airspace.

Indeed, in *Garden State Farms, Inc. v. Bay,* 77 N.J. 439, 447, 390 A.2d 1177, 1181 (1978), relied on by the Neighbors and the County, the New Jersey Supreme Court conceded that state and local authority over the operation and navigation of aircraft was preempted. The court held, however, that a local zoning ordinance could validly prohibit a small helistop. To say that local authority may use its zoning power to ban a certain use is not the same as to say that it may permit a use subject to conditions that affect air navigation. *City of Burbank* does not preempt all state and local zoning power with respect to airports. A zoning ordinance that does not regulate aircraft noise emissions or the actual conduct of flight operations may withstand a

preemption argument. *Faux–Burhans v. Frederick County*, 674 F.Supp. 1172 (D.M.1987), *aff'd without opinion*, 859 F.2d 149 (4th Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 869, 102 L.Ed.2d 992 (1989). *See also Gateway Motels, Inc. v. Monroeville*, 106 Pa.Commw. 42, 525 A.2d 478 (1987) (zoning conditions requiring alarm system and installation of fire equipment at heliport not preempted under *City of Burbank* ). The problem before us is that Board conditions 2 and 3 do both. Local government may not adopt noise abatement plans that impinge on aircraft operations. *San Diego Unified Port District v. Gianturco*, 651 F.2d 1306 (9th Cir.1981), *cert. denied, Department of Transportation v. San Diego Unified Port District*, 455 U.S. 1000, 102 S.Ct. 1631, 71 L.Ed.2d 866 (1982) (striking down curfew).

The Neighbors also take comfort from cases such as *Bieneman v. City of Chicago*, 864 F.2d 463 (7th Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 2099, 2100, 104 L.Ed.2d 661 (1989), but *Bieneman* is cold comfort for them. *Bieneman* was an action to recover damages by one adversely affected by noise from O'Hare Airport. As Judge Easterbrook points out, for the court, "Bieneman wants damages, not regulation" and *City of Burbank* dealt with regulation. 864 F.2d at 472.

The *Bieneman* court held that even though the substantive area of aircraft noise regulation was preempted by federal law, common law remedies were not. 864 F.2d at 471. That is also the holding of *Wood v. City of Huntsville*, 384 So.2d 1081 (Ala.1980). In that case Dr. Wood's neighbors sought to enjoin his operation of a helicopter from his roof. The Supreme Court of Alabama reasoned that "[i]n the specific area of noise control, state and local governments cannot use their police powers to control noise by regulating the flight of planes." *Id.* at 1084. But it held that liability in nuisance might exist despite federal regulation of airport activities. *Id.* at 1085. Of course, neither the Neighbors nor Carroll County are suing for money damages because of airport noise or in nuisance.

Rather, the County is seeking to use its "police powers to control noise by regulating the flight of planes."

It is that sort of regulation that has been repeatedly invalidated on the ground of federal preemption. *See, e.g., Pirolo v. City of Clearwater,* 711 F.2d 1006 (11th Cir.1983) (curfew and air traffic pattern ordinances preempted); *Northeast Phoenix Homeowners' Ass'n v. Scottsdale Municipal Airport,* 130 Ariz. 487, 636 P.2d 1269 (App.1981) (judicially-imposed curfew preempted); *Gary Leasing Inc. v. Town of Pendleton,* 127 Misc.2d 194, 485 N.Y.S.2d 693 (N.Y.Sup.Ct.1985) (curfew and limitation on maximum number of planes that could be based at airport preempted).[5]

All the cases finding preemption do not necessarily involve large airports. The airport in *United States v. City of Blue Ash,* 487 F.Supp. 135 (S.D. Ohio, W.D.1978), *aff'd mem.* 621 F.2d 227 (6th Cir.1980), was not served by any certified air carrier, had no regularly scheduled flights, and lacked a control tower. It was a general aviation airport. Nevertheless, a noise control ordinance was preempted because it dealt with noise control of aircraft in flight in navigable airspace. Similarly, a federal district court struck down an attempt by the Town of Gardiner, New York, to regulate small airports and parachute jumping by, among other things, prohibiting night jumping and banning aircraft that emitted noise over a certain level. In *Blue Sky Entertainment, Inc. v. Town of Gardiner, supra,* 711 F.Supp. at 694–695, the court explained that the town could not use its police powers to control aircraft noise by regu-

---

5. For a list of some 13 earlier decisions from several federal circuits and six states that have accepted, "without contrary authority" the "proposition that the federal government has preempted the area of flight control regulation to eliminate or regulate noise," see *San Diego Unified Port District v. Gianturco,* 651 F.2d 1306, 1315 n. 22 (9th Cir.1981), *cert. denied, Department of Transportation v. San Diego Unified Port District,* 455 U.S. 1000, 102 S.Ct. 1631, 71 L.Ed.2d 866 (1982). We note, too, that in *Ward v. State,* 280 Md. 485, 496, 374 A.2d 1118, 1124 (1977), *cert. denied,* 434 U.S. 1011, 98 S.Ct. 723, 54 L.Ed.2d 754 (1978), we referred to *City of Burbank's* holding with respect to noise control preemption, but construed the holding "as limited to that area of aeronautics."

lating the flight of aircraft. It pointed out that "[w]ith the exception of reasonable proprietary regulations ... courts have uniformly struck down attempts by local governments to regulate the noise of aircraft."[6] *Id.* at 695 [footnote and citation omitted].

## III.

The Board's condition 3—the curfew—falls directly within the preemption rule of *City of Burbank* as well as that of other cases we have cited. It is plainly an attempt to limit aircraft noise by regulating the operation of aircraft in navigable airspace over which the FAA has control. Condi-. tion 2 is a less direct effort to control noise by controlling

---

**6.** The Neighbors aver that Congressional action since *City of Burbank v. Lockheed Air Terminal, Inc.,* 411 U.S. 624, 93 S.Ct. 1854, 36 L.Ed.2d 547 (1973), has modified the holding of that and other cases by showing a less preemptive Congressional intent. They cite the Aviation Safety and Noise Abatement Act of 1979 (49 U.S.C.App. §§ 2101 *et seq.*) 101 Stat. 1489, 1523, as well as the Airport and Airway Improvement Act of 1982 (49 U.S.C.App. §§ 2201 *et seq.*) 101 Stat. 1487–1507. To these we might add the Airport Noise Compatibility Planning Regulations of 1981, 14 C.F.R. § 150 (1989), the Airline Deregulation Act of 1978, 49 U.S.C.App. § 1305(a) and (b), 92 Stat. 1708, *as amended by* 98 Stat. 1709, and the Aviation Noise Abatement Policy of 1976, U.S. Department of Transportation (November 18, 1976). *See* Bennett, *Airport Noise Litigation,* 47 J.Air.L. & Com. 449, 452–453 (1982). The Neighbors see support for their view in some legislative history of the 1979 Act emphasizing state and local responsibility for assuring that land use planning and zoning "are compatible with present and projected aircraft noise exposure in the area." S.Rep. No. 52, 96 Cong. 2d Sess. (1980), 1980 U.S.Code Cong. & Admin. News 89, 91. What this language deals with is not local control of aircraft noise but local zoning to keep residential and other incompatible activities away from airports. *See Greenberg v. State,* 66 Md.App. 24, 502 A.2d 522, *cert. denied,* 305 Md. 621, 505 A.2d 1342 (1986) (discussing noise zones under Maryland airport zoning law; Md.Code (1977, 1989 Supp.), §§ 5–801 through 5–823 of the Transportation Article).

Review of post-*City of Burbank* federal airway legislation and the numerous regulations adopted pursuant thereto shows that the federal presence in the field has become even more pervasive than it was in 1973. No court has agreed with the Neighbors that this legislation has tended to ameliorate the holding of *City of Burbank. See, e.g., San Diego Unified Port District,* 651 F.2d at 1313 n. 15 (Acts subsequent to *City of Burbank* manifest Congress's continuing intent to preempt local regulation).

aircraft operations, but it is one, nevertheless. *See Gary Leasing, Inc.*, 127 Misc.2d at 195, 485 N.Y.S.2d at 694. We hold that both conditions are preempted under *City of Burbank* and, therefore, unconstitutional.

This holding compels us to reverse the judgment of the Court of Special Appeals with respect to Board conditions 2 and 3. Our holding, in effect, affirms the judgment of the Circuit Court for Carroll County which remanded the case to the Board for further proceedings in light of *O'Donnell v. Bassler*, 289 Md. 501, 513–514, 425 A.2d 1003, 1010 (1981), *cert. denied*, 299 Md. 426, 474 A.2d 219 (1984) (county zoning board has authority as administrative body to determine whether to grant exception).

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED IN PART AND AFFIRMED IN PART. CASE REMANDED TO THAT COURT WITH DIRECTION TO AFFIRM THE JUDGMENT OF THE CIRCUIT COURT FOR CARROLL COUNTY. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY APPELLEES.

McAULIFFE, Judge, dissenting.

I cannot agree that the Congress of the United States intended to pre-empt the right of Carroll County to impose the conditions at issue here, and I do not believe that the United States Supreme Court held to the contrary in *City of Burbank v. Lockheed Air Terminal, Inc.*, 411 U.S. 624, 93 S.Ct. 1854, 36 L.Ed.2d 547 (1973). In *City of Burbank*, the Supreme Court dealt with a city ordinance that prohibited jet aircraft from taking off from the Hollywood–Burbank Airport between 11 p.m. of one day and 7 a.m. the next day. This ordinance affected a regularly scheduled flight of a commercial air carrier that originated in Oakland and was scheduled to stop at Hollywood–Burbank before departing for San Diego. The Court held that "airspace management" had been pre-empted by the United States, and that the City of Burbank regulation invaded the field of "air-

space management." The Court noted the findings of the trial judge that:

> The imposition of curfew ordinances on a nationwide basis would result in a bunching of flights in those hours immediately preceding the curfew. This bunching of flights during these hours would have the twofold effect of increasing an already serious congestion problem and actually increasing, rather than relieving, the noise problem by increasing flights in the period of greatest annoyance to surrounding communities. Such a result is totally inconsistent with the objectives of the federal statutory and regulatory scheme.
>
>        *     *     *     *     *     *
>
> The imposition of curfew ordinances on a nationwide basis would cause a serious loss of efficiency in the use of the navigable airspace.

*Id.* at 627–28, 93 S.Ct. at 1856–57.

The case before us does not involve scheduled airline service, or a public use airport. It does involve a small, grass airstrip from which one or two powered aircraft operate to tow gliders into the air. This airport is privately owned. It is not proposed to be a general aviation airport. It will not be open to other aircraft wishing to land or take off. The conditions imposed by the Carroll County Board of Zoning Appeals will not "increase congestion, cause a loss of efficiency, [or] aggravate the noise problem," as was the case in *City of Burbank. Id.* at 628, 93 S.Ct. at 1857.

The Woodbine Airstrip is not a "public use airport" within the coverage of the Aviation Safety and Noise Abatement Act of 1979, 49 U.S.C.App. §§ 2101 *et seq.,* because it is not a "public airport," a "privately owned reliever airport," nor a "privately owned airport which is determined ... to enplane annually 2,500 or more passengers and receive scheduled passenger service of aircraft." 49 U.S.C.App. § 2202(a)(18).

Although all aircraft, including those operating from the Woodbine Airstrip, are subject to certain Federal Aviation

Administration regulations, there is no control tower at Woodbine, and no direct Federal Aviation Administration supervision of the operation of the airport.

As the Supreme Court has pointed out, the implied pre-emption of this field by Congress must necessarily be very broad. Notwithstanding that breadth, I do not believe that it extends so far as to preclude the local imposition of conditions upon the grant of permission to operate a facility of this type, where airspace management is not implicated.

I concede that the majority opinion of a sharply divided Supreme Court in *City of Burbank* may be read as expansively as the majority of this Court suggests. I do not agree that such a broad reading is mandated, or reasonable as applied to the facts of the case before us. I would hold that the imposition of conditions two and three was a valid exercise of the authority of the Carroll County Board of Zoning Appeals.